Michael D. KNAPS, Plaintiff-Appellant,

and

Travelers Insurance Company, Intervenor-Appellant,

v.

B & B CHEMICAL COMPANY, INC., Defendant-Appellee.

No. 87–3407

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 9, 1987.

Rehearing Denied Nov. 4, 1987.

Kenneth R. Bowen, Daniel J. Caruso, Rebecca L. Stafford, Simon, Peragine, Smith & Redfearn, New Orleans, La., for plaintiff-appellant.

Daniel W. Nodurft, New Orleans, La., for Travelers Ins. Co.

Colvin G. Norwood, Jr., Robert W. Maxwell, Eric Shuman, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Michael D. Knaps, Plaintiff below, appeals the district court's order granting summary judgment to defendants. The district court held that Knaps' claim is prescribed under Louisiana's statute of limitations. In light of recent decisions of the Louisiana Supreme Court, we vacate the order and remand for further proceedings.

I

Knaps washed planes as an Eastern Airlines employee in 1982 and 1983. Beginning in March of 1982, Knaps came in contact with soap manufactured by B & B Chemical Company, the defendant. Knaps alleges that this soap caused a severe and permanent skin disorder. According to his deposition, Knaps believed from the first incidence of his condition, in 1982, that it was caused by B & B's soap.

Knaps was treated by two company doctors in February and June of 1983. Neither doctor, Knaps alleges, acknowledged a relationship between his condition and the soap he used at work. Accordingly, Eastern did not pay workmen's compensation benefits.

Knaps sought the diagnosis of several other doctors through March 1985, none of whom acknowledged any causal connection to the soap. It was not until June 17, 1986, according to Knaps, that a doctor diagnosed his condition to be the result of B & B's product.

A few days later Knaps filed suit in the United States District Court for the Eastern District of Louisiana. The court dismissed his case on May 27, 1987, finding that the cause of action was prescribed under Louisiana's one-year statute of limitations. The court found that Knaps' awareness of his condition and its cause put Knaps on constructive notice of his claim more than one year prior to filing this action.

II

As the district court recognized, Louisiana's one-year prescriptive period does not begin to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relationship between the tortious act and the damage. *Duhon v. Saloom*, 323 So.2d 202, 204 (La. App. 3d Cir.1975). No one disputes that Knaps had notice as to the first two elements. But Knaps argues that he did not have constructive notice of *causation* until he received a doctor's diagnosis confirming his suspicion.

Under *Cartwright v. Chrysler Corp.*, 232 So.2d 285 (La.1970), the test for constructive notice was formulated as follows:

Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.

*Id.* at 287.

Were this the standard we would have no problem with the district court's ruling. The immediacy of Knaps' reaction to the soap and Knaps' own efforts to inquire about causation indicate that Knaps' attention was excited. If *Cartwright* were satisfied, the statute of limitations would have run from 1982, the date of his initial injury, and would bar the action.

However, very recent decisions of the Louisiana Supreme Court have undermined the simple *Cartwright* framework. In *Jordan v. Employee Transfer Corp.*, 509 So.2d 420 (La.1987), the court explicitly modified the *Cartwright* standard. *Id.* at 422 & n. 1.[1] The court said,

---

1. *Jordan* was foreshadowed by *Griffin v. Kinber-* ger, 507 So.2d 821, 824 n. 2 (La.1987). There

Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.

*Id.* at 423. According to the court, "When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction." *Id.*[2]

The district court's reasons for decision did not discuss the reasonableness of Knaps' delay in filing suit. Instead the court concluded that Knaps' own inquiries established at least constructive notice of causation. *Jordan*, however, requires us to go one step further. The question is whether, in light of his own information and the diagnoses he received, Knaps was *reasonable* to delay in filing suit. We cannot say, as a matter of law, that an injured party acts unreasonably by delaying a lawsuit because the party's doctors consistently deny that a suit would be justified.

Nor do we accept appellee's invitation to set aside the issue of *constructive* notice in order to rule that Knaps had enough *actual* notice to activate prescription in 1982. First, the district court did not clearly rule that Knaps had actual notice. The court concluded only that Knaps "had at least constructive knowledge of ... the causal connection more than one year prior to the suit."

More importantly, we doubt whether *Jordan*'s new standard can be avoided in this case by a simple reference to "actual" notice. Knaps may have "actually" known or believed that B & B caused his injury, but

in light of contrary expert diagnoses it still may have been reasonable to delay filing an action. That is the question for the district court to answer. Accordingly, the case is VACATED and REMANDED for further proceedings not inconsistent with this opinion.

---

the Louisiana Supreme Court refused to bar a medical malpractice suit under the statute of limitations. The plaintiff in *Griffin* had been told by doctors that the injury was a natural consequence of treatment. On that basis, the court held, it was reasonable for the plaintiff to delay filing until plaintiff had learned through other sources that the injury could have been caused by malpractice.

**2.** Appellees point out that *Jordan*'s result can also be justified because the plaintiffs there may have delayed filing because of bad faith assurances made by defendants. *See* 509 So.2d at 422. No doubt those assurances helped plaintiffs establish that their delay was reasonable, but the *Jordan* court did not limit application of the reasonableness test to cases of bad faith.