IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-3533

_____

JULIUS DUCRE,

                                        Plaintiff,

versus

MINE SAFETY APPLIANCES, ET AL.,

                                        Defendants.

*************************************************

JOSEPH BARTHOLOMEW,

                                        Plaintiff-Appellant,

versus

AVONDALE INDUSTRIES, INC., ET AL.,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____

                                        (June 10, 1992)

Before WILLIAMS, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Joseph Sidney Bartholomew appeals a summary judgment
dismissing his silicosis case as prescribed. We conclude that
there is a genuine issue of material fact as to when Bartholomew
had a reasonable basis for a claim. We reverse and remand for
trial.

On January 30, 1990, Joseph Sidney Bartholomew sued his employer, Avondale Industries, various manufacturers of silica and respirator equipment, and their insurers in Louisiana state court. Bartholomew alleged that these defendants caused his silicosis. He alleged that he was assigned hazardous work because he was black and attempted to state a claim under 42 U.S.C. § 1981 as well as a state tort claim under Louisiana law. Defendants' insurer removed the case to federal court where the case was consolidated with other similar occupational disease claims. We are told nothing about the "federal claim." Having served its jurisdictional role, it has apparently been ignored.

Defendant Mine Safety Appliances Co. moved to dismiss urging that the applicable period of prescription had run. The magistrate treated this motion as a motion for summary judgment and granted the motion on June 11, 1991. On June 25, the magistrate granted summary judgment to all other defendants on similar grounds.

## II.

During the 1970's, Avondale began testing its employees who worked around silica, asbestos, or other dusty material for pulmonary disease. Ochsner Medical Foundation, an independent medical firm, contracted with Avondale to conduct annual chest x-rays and breathing tests for these employees.

Until 1981, Bartholomew worked primarily as a sand-blaster. In 1981, Dr. Ochsner's staff tested Bartholomew for lung disease. On November 10, 1981, Dr. Brooks Emory wrote Avondale, informing it

that Bartholomew's x-ray suggested silicosis but that Bartholomew's lungs functioned normally. This report was not sent to Bartholomew. Bartholomew testified by deposition that, when he was tested, he could breathe without any unusual difficulty. Indeed, even when this litigation began, Bartholomew stated that he considered his health "pretty good." Aside from "shortness of breath when [he was] jogging or climbing," Bartholomew has exhibited no symptoms of lung disease.

On receiving Dr. Emory's report, Avondale removed Bartholomew from sand-blasting duties. Bartholomew testified in his deposition that some unidentified Avondale employee approached him while he was sand-blasting and told him that he was being relieved of sand-blasting duties because he had "sand in his lungs." However, there is no record evidence that anyone told Bartholomew that sand in the lungs was necessarily a serious medical condition. On the contrary, Avondale simply assigned Bartholomew to non-sand-blasting duties.

In December 1981, Avondale submitted an LS-202 form to the United States Department of Labor with a copy of Dr. Emory's x-ray report attached. Employers use the LS-202 form to inform the Department of Labor's Worker's Compensation Program that an employer suspects a job-related injury. Avondale's transmittal letter to the Department of Labor stated that Bartholomew "has evidence of silicosis." The letter further stated that Bartholomew had been removed from sand-blasting duties and assured the Department of Labor that Bartholomew would be "monitored under our

3

medical programs and we will keep you informed of any further developments." The letter offered no further explanation of silicosis, its causes, or its symptoms. Avondale sent a copy of this letter to Bartholomew.

Bartholomew continued to receive annual chest x-rays and breathing tests as part of Avondale's medical surveillance program. Each year from 1984 until 1990, Avondale sent Bartholomew the same letter.

> "There have been no significant changes in your chest x-ray and/or pulmonary function since the last time the studies were conducted. You may continue working in your present area using the proper protective devices as needed."

The letters did not mention that Bartholomew's lungs showed signs of silicosis. There is no evidence that Bartholomew felt sick, had difficulty breathing, missed any work because of illness, or took any medication for any illness during this time. He continued to work for Avondale.

The record also contains documents styled "Physician's Occupational/Environmental Medical History Follow-Up." Barthomomew signed one of these documents. The documents contain brief, handwritten summaries of dated interviews of Bartholomew by a physician. None of the summaries refers to silicosis or mentions that Bartholomew has symptoms of lung disease. On the contrary, the summary of an interview dated March 21, 1983 states that Bartholomew has "No respiratory problems." The summary dated October 19, 1981 states that an "x-ray [was] explained," but says nothing more about the "explanation." On the bottom of the form,

4

the form states, "This is to certify that the findings of my clinical tests (x-ray and spirometer) conducted on _____ have been fully explained to me." Underneath this certification, Bartholomew's signature appears. The date of the tests does not appear in the form, and Bartholomew's signature is not dated.

The magistrate found that there was no question of fact but that Bartholomew

> "was aware at least five years prior to filing suit that he had sustained an injury to his lung as a result of his sandblasting work at Avondale and that the problem remained unresolved. These facts were sufficient to alert a reasonable person to take some action to determine if there was legal redress for his injury and to commence the running of prescription."

Bartholomew filed a timely notice of appeal from the magistrate's decision.

III.

Under the familiar standard, the movant is entitled to summary judgment only if the evidence, viewed in the light most favorable to the non-movant, shows no genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2252 (1986).

Prescription is an affirmative defense, and defendants bear the burden of its proof at trial. Hilman v. Succession of Merrett, 291 So.2d 429, 726 (La. 1974). Here, the defendants' burden was to demonstrate the absence of a genuine issue of material fact. We find that defendants did not carry this burden. We are persuaded that there is a fact question as to whether Bartholomew acted reasonably in not filing suit until 1990.

5

The prescription period of one year for tort actions in Louisiana runs from the date that the injury or damage was sustained. La. Civ. Code art. 3492. However, the one-year period does not begin to run against a plaintiff ignorant of the facts upon which the claim is based as long as the ignorance is not unreasonable. Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La. 1987); Lott v. Haley, 370 So.2d 521 (La. 1979); Goodman v. Dixie Welding Machine, 552 So.2d 440 (La. App. 4 Cir. 1989); Federal Deposit Insurance Corp. v. Aetna Casualty & Surety Co., 744 F. Supp. 729, 735 (E.D. La. 1990).

"Mere apprehension that something might be wrong" does not make delay in filing an action unreasonable, Griffin v. Kinberger, 507 So.2d 821, 823 (La. 1987), nor does knowledge that one has a disease. Knaps v. B&B Chem. Co., 828 F.2d 1138, 1139 (5th Cir. 1987). There must be knowledge of the tortious act, the damage caused by the tortious act, and the causal link between the act and the damage before one can be said to have "constructive notice" of one's cause of action. Knaps, 828 F.2d at 1139.

We find that the evidence does not preclude a genuine factual dispute about whether these conditions were met more than a year before Bartholomew filed his action. It is undisputed that an Avondale employee told Bartholomew in 1981 that he was being removed from sand-blasting because he had "sand in [his] lungs." Bartholomew also received a copy of a letter sent to the Department of Labor by Avondale in 1981 that stated that Bartholomew "had evidence of silicosis." Finally, the record contains a summary of

6

medical examinations signed by Bartholomew.  Bartholomew certified by his signature on this summary that certain unidentified "clinical tests" had been explained to him.

The remark by an Avondale employee that Bartholomew had "sand in his lungs" does not tell Bartholomew that he had contracted silicosis or any other job-related disease.  At most, it told him that he was being removed from a silica-dust laden environment to avoid contracting a disease from inhaled silica dust.  Bartholomew knew that he had inhaled silica dust but that does not mean that he knew he had silicosis.  Such a claim would not accrue until Bartholomew had incurred some sort of damage from the inhalation, Owens v. Morris, 449 So.2d 448, 450 (La. 1984), and there is no evidence that Bartholomew knew that the "sand" in his lungs had injured him.

A jury might conclude that Bartholomew believed that he was being removed from sand-blasting precisely because he had not yet contracted a disease and that the transfer to a dust-free workplace was to remove the danger.  We cannot say as a matter of law that such an inference would be unreasonable given that, during several years of medical surveillance, doctors repeatedly informed Bartholomew through routine letters that his condition had not changed since the last examination.  Such stability of condition might have led Bartholomew to believe that he had not contracted silicosis, a disease characterized by progressive lung degeneration even after exposure to silica dust has ceased.  See Faciane v.

7

Southern Shipbuilding Corp., 446 So.2d 770, 772 (La. App. 4th Cir. 1984) (describing progressive nature of silicosis).

Defendants also rely on a form signed by Bartholomew certifying that the doctors hired by Avondale explained the results of "clinical tests" to him. The form does not, however, disclose the explanation or which clinical tests were explained. Indeed, the comments on the form state that on October 19, 1983 Bartholomew had "no respiratory problems." The forms, therefore, prove little about whether anyone had ever explained to Bartholomew that he had been diagnosed as having a job-related lung disease.

The defendants' best evidence is a transmittal letter to the Department of Labor, dated December 15, 1981, stating that "under our pulmonary surveillance program it was discovered that Mr. Bartholomew has evidence of silicosis." A copy of this letter was sent to Bartholomew. The letter is not strong enough, however, to take this case from the jury.

Nothing in the letter informed Bartholomew that he had a lung disease caused by his work as a sand-blaster. The letter simply stated that Bartholomew's test results indicated signs of "silicosis," without any explanation of what "silicosis" is or how it is caused. The letter referred to sand-blasting only in noting that Bartholomew had been removed from his sand-blasting duties and re-assigned to work as a painter. The jury could have concluded that Bartholomew reasonably failed to infer from the letter that he had an occupational disease. This conclusion is strengthened by

8

the fact Bartholomew may have read with less care a letter that was directed to the Department of Labor and not to him.

That equivocal character of facts known by Bartholomew is enhanced by Bartholomew's limited education. "[T]he educational status and medical sophistication" of a plaintiff is relevant to assessing whether a plaintiff acts reasonably in delaying the filing of a tort action. Layton v. Watts Corp., 498 So.2d 23, 25 (La. App. 5 Cir. 1986). Bartholomew left school after completing the tenth grade.

Assuming we should charge Bartholomew with knowledge that "silicosis" was an occupational lung disease, Avondale's letter to the department of Labor did not tell Bartholomew that he had contracted silicosis. The letter was carefully confined to a disclosure that Bartholomew's tests showed "evidence of silicosis," that Bartholomew had been removed from sand-blasting, and that Bartholomew would be "monitored under our medical programs and we will keep you informed of any further developments."

The letter states a tentative hypothesis that Bartholomew might have contracted silicosis; it did not tell Bartholomew that silicosis had been diagnosed. See Touchstone v. Land & Marine Applications, Inc., 628 F.Supp. 1202, 1215 (E.D. La. 1986) (where plaintiff "was not given a definite diagnosis of silicosis and . . . was not symptomatic," fact question exists concerning prescription, even though plaintiff "was told by a doctor that he may have had silicosis, or any one of five other diseases").

9

Defendants rely on Orgeron v. Mine Safety Appliances Co., 603 F. Supp. 364 (E.D. La. 1985). The Orgeron court applied Cartwright v. Chrysler Corp., 232 So.2d 285, 287 (La. 1970) that:

> "Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of the prescription period."

As we have recognized, the Cartwright test was altered by the Louisiana Supreme Court's decision in Jordan v. Employee Transfer Corp., 509 So.2d 420, 423-24 (La. 1987). Knaps v. B & B Chem. Co., Inc., 828 F.2d 1138, 1139 (5th Cir. 1987) ("very recent decisions of the Louisiana Supreme Court have undermined the simple Cartwright framework").

In Jordan the Louisiana Supreme Court noted that its Cartwright decision offered "an incomplete definition of notice that will start the running of prescription" and substituted a "reasonableness" test for assessing whether the period of prescription had run. Cartwright held that prescription ran when the plaintiff ought reasonably to have made some sort of further inquiry. Jordan held, by contrast, that "prescription did not begin to run until [the plaintiffs] had a reasonable basis to pursue a claim against a specific defendant." Id. at 424.

In Delaney v. Avondale Industries, Inc., Slip Op. No. 90-3084 (5th Cir. September 10, 1991) (unpublished slip opinion), on facts more favorable to Avondale than here, we held that an Avondale employee's delay in filing suit for job-related silicosis was not unreasonable. Melvin Delaney, a sandblaster working for Avondale,

10

had been placed under medical surveillance and x-rayed by the Ochsner Clinic. Dr. Brooks Emory reported that Delaney's lung condition was "compatible with asbestosis." This analysis of Delaney's x-rays was repeated by another doctor to Delaney in 1983. The Department of Labor notified Delaney that it had been informed by Avondale that Delaney had "silicosis [sic] or asbestos [sic]." In 1985, Delaney was x-rayed once more, and Dr. Emory reported that the x-ray "is most consistent with asbestosis." After reviewing this x-ray report, another doctor, Dr. Mabey, discussed the report with Delaney. We accepted the magistrate's finding that Dr. Mabey informed Delaney that he had been diagnosed as having asbestosis.

Despite this specific communication to Delaney, we found that the magistrate clearly erred in finding that Delaney had acted unreasonably in delaying filing an action against Avondale until 1988. In reaching this conclusion, we relied on "the entire atmosphere of the surveillance program" during which Delaney was repeatedly sent 'no-change' letters informing him that his lung condition had not degenerated. In addition, we noted that Delaney had "only a nominal level of education and a complete absence of medical sophistication." Like Bartholomew, Delaney "appeared to have had no clinical or subjective, causally-related manifestations of injury caused by [lung disease]," and his "general physical condition allowed him to perform all of his usual employment-related tasks."

Given all of these circumstances, the Delaney court found that defendants had not established that Delaney acted unreasonably in

11

failing to file his action before 1988.  We say here only that the issue must be left to the jury.  R.J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963).

REVERSED and REMANDED.