Dianne CASTANO, et al,

v.

The AMERICAN TOBACCO COMPANY, et al.

Civil Action Nos. 94–1044, 94–3000.

United States District Court, E.D. Louisiana.

Feb. 21, 1997.

Daniel E. Becnel, Jr., Becnel, Landry & Becnel, Reserve, LA, Joseph M. Bruno, Bruno & Bruno, New Orleans, LA, Peter Joseph Butler, Peter J. Butler, Jr., Breazeale, Sachse & Wilson, New Orleans, LA, Wells Talbot Watson, Baggett, McCall & Burgess, Lake Charles, LA, Russ M. Herman, Herman, Herman, Katz & Cotlar, New Orleans, LA, Michael X. St. Martin, St. Martin & Lirette, APLC, Houma, LA, Robert L. Redfearn, Simon, Peragine, Smith & Redfearn, LLP, New Orleans, LA, Wendell H. Gauthier, Julie Brannon Beiser, Dana Kim Cormier, Gauthier & Murphy, Metairie, LA, Edwin Rene Murray, Edwin R. Murray & Associates, New Orleans, LA, Kenneth Michael Carter, Carter & Cates, New Orleans, LA, Donna Unkel Grodner, Moore, Walters, Shoenfelt & Thompson, Baton Rouge, LA, Elizabeth J. Cabraser, Richard M. Heimann, Robert Lieff, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, Arnold Levin, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, John (Jack) Brown Baldwin, Scott Baldwin, Baldwin & Baldwin, Marshall, TX, Bettye Anne Barrios, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, Louie J. Roussel, III, Metairie, LA, Perry Weitz, New York City, Melvin Belli, San Francisco, CA, Margaret Moses Branch, Turner Branch, Branch Law Firm, Albuquerque, NM, John P. Coale, Coale, Allen & Van Susteren, Washington, DC, Ralph Irving Knowles, Jr., Kenneth S. Canfield, Samuel W. Wethern, Doffermyre, Shields, Canfield, Knowles & Divine, Atlanta, GA, Andrew W. Hutton, Mark B. Hutton, Michaud, Hutton & Bradshaw, Wichita, KS, Richard Alexander, Alexander Firm, San Jose, CA, Stanley M. Chesley, Sherrill P. Hondorf, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Gayle L. Troutwine, Michael L. Williams, Jeffrey S. Merrick, Williams & Troutwine, Portland, OR, Robert D. Greenbaum, Myles H. Milman, Kohn, Nast & Graf, Philadelphia, PA, John P. Kopesky, Sheller, Ludwig & Badey, Philadelphia, PA, Stephen Barnett Murray, Murray Law Firm, New Orleans, LA, Richard A. Daymard, Northeastern University School of Law, Boston, MA, Jodi W. Flowers, Susan Nial, Charles W. Patrick, Ronald L. Motley, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, John R. Climaco, Michael V. Kelley, Jack D. Maistros, Shannon P. Haggerty, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, John Bologna Krentel, Metairie, LA, Daniel G. Abel, New Orleans, LA, Francis H. Hare, Jr., Castano Plaintiffs' Legal Committee, New Orleans, LA, George Frieberg Riess, Polack, Rosenberg, Endom & Riess, New Orleans, LA, H. Russell Smouse, E. David Hoskins, John C.M. Angelos, Peter Angelos Firm, Towson, MD, Calvin Clifford Fayard, Jr., Fayard & Honeycutt, Denham Springs, LA, Bruce C. Dean, Gauthier, Downing, LaBarre, Beiser & Dean, Metairie, LA, for plaintiffs.

Robert E. Winn, Joy Goldberg Braun, Sessions & Fishman, New Orleans, LA, Bruce

G. Sheffler, Chadbourne & Parke, New York City, for American Tobacco Co.

Steven W. Copley, John Mason McCollam, Gordon, Arata, McCollam & Duplantis, LLP, New Orleans, LA, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Inc.

John Mason McCollam, Gordon, Arata, McCollam & Duplantis, LLP, New Orleans, LA, Charles L. Chassaignac, Peter A. Feringa, Jr., Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co.

Charles Fenner Gay, Jr., Scott Edward Delacroix, Thomas J. Wyllie, Adams & Reese, New Orleans, LA, Gary R. Long, Allen Rennie Purvis, James T. Newsom, James D. Muehlberger, Shook, Hardy & Bacon, Kansas City, MO, Dan K. Webb, Winston & Strawn, Chicago, IL, Robert Noel Clinard, Hunton & Williams, Richmond, VA, for Phillip Morris Inc.

Stephen H. Kupperman, Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler, & Sarpy, LLP, New Orleans, LA, for RJR Nabisco Inc.

Stephen H. Kupperman, Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler, & Sarpy, LLP, New Orleans, LA, Theodore M. Grossman, Paul G. Crist, Hugh R. Whiting, Mark A. Belasic, Robert C. Weber, Jones, Day, Reavis & Pogue, Cleveland, OH, S. Ann Saucer, Dallas, TX, for R.J. Reynolds Tobacco Co.

John Jerome Weigel, Joseph Jacob Lowenthal, Jr., Madeleine Fischer, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, James V. Kearney, Francis K. Decker, Jr., Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, Jerry L. Mitchell, Kasowitz, Hoff, Benson, Torres & Friedman, Houston, TX, Marc E. Kasowitz, Daniel R. Benson, Michael M. Fay, Aaron H. Marks, Kasowitz, Benson, Torres &

Friedman, New York City, for Liggett Group Inc.

Robert E. Winn, Joy Goldberg Braun, Sessions & Fishman, New Orleans, LA, for American Brands Inc.

Charles L. Chassaignac, Peter A. Feringa, Jr., Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, Steven D. McCormick, David M. Bernick, Michelle H. Browdy, Andrew R. McGaan, Kirkland & Ellis, Chicago, IL, Griffin B. Bell, Gordon A. Smith, King & Spalding, Atlanta, GA, for Brown & Williamson Tobacco Corp.

Charles L. Chassaignac, Peter A. Feringa, Jr., Carmelite M. Bertaut, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Batus Holdings Inc., Batus Inc.

John Jerome Weigel, Joseph Jacob Lowenthal, Jr., Madeleine Fischer, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, Jerry L. Mitchell, Kasowitz, Hoff, Benson, Torres & Friedman, Houston, TX, Marc E. Kasowitz, Daniel R. Benson, Michael M. Fay, Aaron H. Marks, Kasowitz, Benson, Torres & Friedman, New York City, for Liggett & Myers Inc., Brooke Group Ltd.

Charles W. Schmidt, III, Christovich & Kearney, New Orleans, LA, for United States Tobacco Co., UST Inc.

Alan Harry Goodman, Thomas Mente Benjamin, Lemle & Kelleher, New Orleans, LA, for The Tobacco Institute, Inc.

Steven W. Copley, John Mason McCollam, Gordon, Arata, McCollam & Duplantis, LLP, New Orleans, LA, for Loews Corp.

Charles Fenner Gay, Jr., Scott Edward Delacroix, Thomas J. Wyllie, Adams & Reese, New Orleans, LA, for Philip Morris Companies, Inc.

## ORDER AND REASONS

BERRIGAN, District Judge.

This matter comes before the Court on motions for summary judgment filed by the non-settling defendants in both of the above captioned consolidated cases. Having considered the record, the memoranda of counsel and the law, the Court has determined

that the motions should be denied for the following reasons.

The individual claims of both Dianne Castano (Castano) and Ernest Perry (Perry) are the same as those asserted by the former class: "The gravamen of their complaint is the novel and untested theory that the defendants fraudulently failed to inform consumers that nicotine is addictive and manipulated the level of nicotine in cigarettes to sustain their addictive nature." *Castano v. American Tobacco Co.*, 84 F.3d 734, 737 (5th Cir. 1996).[1] The complaint alleges the same tortious causes of action: fraud and deceit, negligent misrepresentation, intentional infliction of emotional distress, negligence and negligent infliction of emotional distress, violation of consumer protection statutes, breach of express warranty, breach of implied warranty, strict product liability and redhibition. These motions are based on the common argument that the claims of both Castano and Perry should be dismissed because they have prescribed as a matter of law under La.Civ.Code art. 3492.[2]

Castano asserts a survival claim on behalf of her late husband, who died more than one year prior to the filing of her lawsuit.[3] The defendants summarize her deposition testimony as establishing that "[b]y 1991 or 1992, Mrs. Castano had heard and believed the essence of the nicotine 'addiction' theory: that the reason smokers have difficulty quitting is because they need the nicotine they get from cigarettes." (Rec.Doc.528, p. 3). However, the cited deposition testimony itself indicates only that Castano "presumed" that nicotine patches assist the smoker in quitting by replacing the nicotine derived from the cigarettes. (Rec.Doc. 528, Exh. A, Castano Depo. pp. 207–212). Castano's deposition also establishes the undisputed fact that her husband tried to quit smoking and was unsuccessful. Her undated affidavit indicates a knowledge of her husband's "addiction to cigarettes," but no facts supportive of a finding of when that knowledge was acquired by either her husband or herself. She swears to the following in her undated affidavit:

> Affiant did not file an action for Peter's death earlier because she had no knowledge of the alleged nicotine levels intentionally created by the cigarette manufacturers, and she was unaware of this until recent publicity regarding the FDA's findings.

(Rec.Doc.528, Exh. D). It is also undisputed that Castano and her late husband had actual knowledge that her husband's cancer was caused by smoking for more than the Statutory year, that his failure to quit smoking caused their alleged emotional distress, marital problems and economic loss from cigarette purchases. The defendants also rely on undisputed deposition testimony that indicates the decedent read magazines and newspapers "religiously." They claim that the fact that the media widely covered the Surgeon General's 1988 report that nicotine was addictive is undisputed.

With respect to Perry, the undisputed facts reveal that he is a smoker and a pharmacist. The defendants point to deposition testimony in which Perry admits that he realized he was "addicted" to nicotine and could not quit years before filing this suit. That deposition testimony also reveals that Perry thought his smoking was a "bad habit" and that he was unable to quit due to a lack of "willpower." (Rec.Doc.542, Exh. 46, Depo.Perry, p. 309).

In these motions, the defendants argue that both plaintiffs had sufficient actual and/or constructive knowledge to begin the running of prescription at an earlier time

---

**1.** The class action was dismissed pursuant to the mandate of the Fifth Circuit.

**2.** No issue as to the characterization of the plaintiffs' claims as delictual has been raised. The relevant provisions of La Civ.Code art. 3492 read:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.

**3.** Counsel for Castano conceded at oral argument that no wrongful death claim is being made.

which would bar these claims. The plaintiffs disagree.[4]

 Prescription is an affirmative defense and defendants bear the burden of proving prescription at trial. *Ducre v. Mine Safety Appliances,* 963 F.2d 757 (5th Cir. 1992). This translates into a burden on the defendants to demonstrate the absence of a genuine issue of material fact on motion for summary judgment. *Id.* Prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished, so if there are two constructions of the statute, the one which favors maintaining the action should be adopted. *Wimberly v. Gatch,* 635 So.2d 206 (La.1994); *Bustamento v. J.D. Tucker,* 607 So.2d 532 (La.1992).[5]

 The first issue raised in these motions is when prescription began. A recent explanation of the rule governing when prescription begins to run was recently provided by the Louisiana Supreme Court:

> Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
>
> When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction ... [P]rescription did not begin to run until [the plaintiffs] had a reasonable basis to pursue a claim against a specific defendant.

*Jordan v. Employee Transfer Corp.,* 509 So.2d 420, 423 (La.1987); *Cole v. Celotex Corp.,* 620 So.2d 1154, 1156 (La.1993). Prescription does not begin to run against a plaintiff ignorant of the facts upon which a claim is based as long as the ignorance is not unreasonable. *Ducre,* 963 F.2d at 760.

In *Ducre, supra,* the Fifth Circuit recognized Louisiana caselaw holding that prescription does not begin to run until the plaintiff has a reasonable basis to pursue a claim against a specific defendant. *Ducre,* 963 F.2d at 761, *citing, Jordan, supra.* The Fifth Circuit reversed the lower court's finding that the plaintiff unreasonably delayed in filing his suit even though the plaintiff had received a letter years prior to filing suit advising that he "has evidence of silicosis." Prescription was for the jury to determine, considering relevant circumstances, including the plaintiff's limited education, his receipt of several letters informing him that his lung condition was not deteriorated, his lack of clinical causally related manifestations of injury and his general ability to perform his work tasks.

Here, the plaintiffs argue that their causes of action arose from the knowledge that cigarettes are designed and manipulated to be addictive.

> It is not the subjective knowledge that one is apparently "addicted" to cigarettes that triggers prescription, rather it is the discovery that Defendants have concealed the addictive nature of nicotine coupled with the knowledge that Defendants have purposefully manipulated dosage levels of nicotine in cigarettes with the intention of keeping smokers hooked.

(Rec.Docs. 553 & 555, p. 2). "[T]he focus of this inquiry is not when Plaintiffs realized that they had acquired a tobacco 'addiction', but rather when they became aware of material factual information concealed and suppressed by Defendants." (Rec.Doc.542, p. 9). The plaintiffs further maintain, "The ongoing conduct and communications by Defendants denying addiction despite their knowledge will continue to preclude prescription." (Rec.Doc.542, p. 6). According to the plaintiffs, it was not until the Congressional hearings in 1994 when the plaintiffs, along with the general public, learned of the defendants' concealment of the truth about the addictiveness of nicotine and the manipulation of nico-

---

4. The plaintiffs also argue that the alleged fraud, suppression and concealment suspended the running of prescription under the doctrine of *contra non valentem* and constitute a continuing tort.

5. For purposes of these motions, the Court chooses to look only to the Louisiana authority provided by the Louisiana Supreme Court and Louisiana statute.

tine levels, that the plaintiffs could have obtained the information necessary to sustain a lawsuit.

The Court's study of the record and the memoranda suggests a basic miscommunication regarding the precise nature of the claims being made by the plaintiffs. Castano's motion characterizes the relevant knowledge as concerning "the alleged injury (emotional distress), its cause (Mr. Castano's failure to quit smoking), and the connection to the product (cigarettes)." (Rec.Doc. 528, pp. 3 & 10). It goes on to restate relevant knowledge as concerning "his failure to quit smoking caused their alleged mental and emotional distress, marital problems and economic loss from cigarette purchases." (Rec.Doc.528, p. 9). In a reply memorandum, the defendants claim that the relevant knowledge pertains to "claimed injuries (failure to quit and alleged emotional distress) and [belief that] such injuries were caused by smoking." (Rec.Doc.548, p. 9). Perry focuses on that plaintiff's statement that he knew he was "addicted" to cigarettes, and in final reply briefly recognizes as relevant the plaintiff's knowledge of "the causal relationship' between smoking and Mr. Perry's injury, 'addiction'. . ." (Rec.Doc.550, p. 16).

While the plaintiffs do not identify their claims by component parts in their memoranda, they do consistently emphasize that their claims require an accurate focus on the allegedly offending defense conduct before a meaningful analysis of the plaintiffs' knowledge can be made. At a minimum and assuming that the parties define "addiction" in the same way,[6] the plaintiffs consistently look to the cause of their addiction in the fraudulent concealment of the defendants, not the cigarettes or the smoking itself. (See e.g.: Rec.Doc. 553, p. 5; Rec Doc. 555, p. 4).

■ The appellate history of this matter offers compelling guidance. The Fifth Circuit unhesitantly recognized that the plaintiffs are asserting a "novel and wholly untested theory" and "seeking compensation solely for the injury of nicotine addiction." *Castano,* 84 F.3d at 737. The Fifth Circuit repeatedly referred to the plaintiffs' "addiction as injury" theory "novel." *Castano,* 84 F.3d at 744, 747, 750. This Court concurs that this characterization is consistent with the plaintiffs' pleadings and arguments. For purposes of this motion and in terms of component parts, the Court finds that the plaintiffs' claims involve an injury of addiction, a cause based on fraudulent concealment and nicotine manipulation and damages concerning emotional distress and monetary loss.

This interpretation of the plaintiffs' claims renders the defendants' motions largely misdirected. Much of the argument recalls battles won in different wars concerning claims relating to injury comprised of physical disease caused by cigarette smoking. For example, the Fifth Circuit in *Allgood v. R.J. Reynolds Tobacco Co.,* 80 F.3d 168 (5th Cir. 1996), clearly did not deal with an "addiction-as-injury" claim with fraudulent concealment as its cause. In fact, the Fifth Circuit in *Castano* summarized *Allgood's* holding as "rejecting failure-to-warn claim against tobacco companies based on inadequate proof of reliance and, alternatively, on 'common knowledge' theory." *Castano,* 84 F.3d at 747, fn. 24. The relevant discussion of prescription must recognize the plaintiffs' novel claims for what they are and not what the defendants want them to be.

■ The alleged undisputed facts in these two individual cases are materially overstated by the defendants in their motions. In large part, the defendants are asking for a judicial determination that every smoker, or at least certainly every American smoker who kept abreast of the news in 1988, has constructive knowledge that cigarettes are "addictive" sufficient to bar any claim.[7]

6. The potential dispute concerning the relevant meaning of "addiction" is discussed hereinafter.

7. Similarly, the *Allgood* opinion, issued before *Castano,* does not hold that nicotine's alleged addictiveness or the defendants' alleged concealment and manipulation was within the "common knowledge." Unlike the health warnings in *Allgood,* the government did not require a warning of addictiveness on cigarette packs. Indeed, the government's investigation regarding the alleged addictiveness of nicotine in the Spring of 1994 and the defendants' denials at those hearings support the finding that there is no "common knowledge" concerning addictiveness of nicotine.

The Court finds that this argument, if relevant, fails for two reasons. First, this argument assumes that addiction is the simple equivalent of the failure or inability to quit. The excerpts of expert opinion on the meaning of "addiction" reveal sufficient divergence from the plaintiffs' use of the term to undermine the defendants' proposed equation and raise a genuine issue of material fact. This divergence also suggests increased scientific knowledge concerning the nature of "addiction" over the years sufficient to warrant detailed discussion in a motion such as this. Second, as previously indicated, the barebone deposition testimony from these two plaintiffs says significantly less about the requisite knowledge than the defendants summarize.

In addition, the undisputed facts presented do not permit summary judgment when applied to the actual claims being made. Even assuming that the defendants establish as undisputed the fact that the "addiction" or failure to quit smoking resulted in the damages sought by the plaintiffs and that the plaintiffs knew that cigarettes caused "addiction" long ago, the plaintiffs' claims survive because these plaintiffs go the next step and claim that the defendants' fraudulent concealment and manipulation caused the "addiction." The plaintiffs focus on the cause of the inability to quit, not on the fact that they could not or did not quit. As a result, Perry is not charged with the requisite knowledge when he states that his "addiction" and inability to quit smoking is caused by himself and his own shortcomings rather than by the defendants' alleged concealment and manipulation.

Finally, this Court cannot hold as a matter of law that an individual consumer exercises reasonable diligence or a reasonable investigation only when he takes steps to access information equivalent to that available through formal discovery in litigation. In the event that formal discovery would fail to yield information supporting a claim, this Court would be equally unwilling to hold that the prerequisite diligence must include efforts using more covert means in the event that the information sought has been destroyed or concealed.

The plaintiffs' theory aims at the heart of the "choice v. addiction" debate. The Court finds that under the undisputed facts, the plaintiffs' earlier knowledge of an inability to quit or "addiction" does not preclude a later claim against the defendants for supplying the cause of that inability. Rather than precluding the plaintiffs' claims, the fact that the 1988 report was issued and reported would be relevant to the claims, as would the fact that in 1988, the federal government regulated the health-related warnings on cigarette packages and did not require a warning of addiction even after the report was issued. However, the plaintiffs' theory permits the defenses that nicotine is not addictive, that the defendants did not fraudulently conceal or manipulate nicotine, and the plaintiffs freely chose the pleasures of smoking while remaining equally capable of making the choice to quit. The fact that the "debate" may have raised the question is not dispositive; when the alleged answer was known or should have been known to the individual plaintiffs determines whether the claims are time-barred as a matter of law.

Louisiana law requires a strict construction of its prescriptive statutes in favor of the obligation sought to be extinguished. *Wimberly, supra.* Under the undisputed facts presented in these motions, the issue of prescription remains a trial issue in these individual cases.[8]

Accordingly,

IT IS ORDERED that the motions for summary judgment filed by the non-settling defendants in both of the above captioned consolidated cases are hereby DENIED.

---

**8.** In light of the Court's ruling, it does not reach the issues of *contra non valentem* and continuing tort.