THERIOT, J.
|2In this products liability case, the plaintiff appeals the dismissal of his products liability claim against the manufacturer of a medical device on the basis of prescription. We affirm.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Frank Raborn, was born with a spinal deformity called spondylolisthesis which eventually resulted in an impingement of his spinal cord. On June 6, 2006, Mr. Raborn underwent a one-level fusion and laminectomy. Dr. Jeffrey R. Albea, the surgeon who performed this surgery, used a medical appliance consisting of rods and collars to support the fusion. Dr. Albea moved his practice out of state shortly after Mr. Raborn’s surgery, so Mr. Raborn visited a Dr. Waguespaek for his post-operative care. Dr. Waguespaek referred Mr. Raborn to a neurologist, Dr. Shawn G. Dunn, in October 2006. In December 2006, x-rays revealed that a pedi-cle screw on the medical appliance placed by Dr. Albea during the June 2006 surgery was broken. Mr. Raborn alleges that Dr. Albea installed the medical appliance supporting the fusion incorrectly, leading to the breaking of the screw and failure of the appliance. Dr. Dunn performed a dis-eogram, which Mr. Raborn alleges caused a spinal fluid leak, resulting in headaches and other symptoms. To treat the spinal fluid leak, Dr. Dunn performed two blood patches at the location of the leak in March of 2007, after which Mr. Raborn began to experience more problems. An MRI revealed a subdural hematoma in his spine, allegedly caused by the second blood patch. Mr. Raborn began to recover from the hematoma in May of 2007.
Once Mr. Raborn recovered from the subdural hematoma, he sought treatment with a different neurosurgeon in Houston, Texas, Dr. Jerry Bob Blacklock. Dr. Blacklock performed an extensive corrective surgery on Mr. |sRaborn’s back on June 12, 2007, in which the broken hardware was removed and replaced with oversized screws, his congenital deformity was repaired, and his back was successfully refused. The fusion performed in this 2007 surgery was a two-level fusion, performed from both the anterior and posterior sides. In performing the fusion, Dr. Blacklock sought and received Mr. Raborn’s permission to use a medical device called “InFUSE,” manufactured by Medtronic, Inc., to promote bone development at the fusion site. Dr. Blacklock’s use of the Medtronic product in Mr. Raborn’s surgery was considered off-label because the product was used in a posterior fusion and in more than one level in an anterior fusion. Mr. Ra-born continued to have back problems after his second surgery.
*1069 Mr. Raborn filed a request for a medical review panel in accordance with La. R.S. 40:1299.47, alleging malpractice by Drs. Dunn[1] and Albea and The NeuroMedical Center Surgical Hospital. The Medical Review Panel issued a decision on July 21, 2009, finding that there was no deviation from the standard of care in the treatment Mr. Raborn received from Drs. Dunn and Albea and The NeuroMedical Center Surgical Hospital.
Mr. Raborn filed a medical malpractice and products liability suit on October 19, 2009 for damages arising from the June 6, 2006 back surgery performed by Dr. Albea and the subsequent procedures performed by Dr. Dunn. On May 18, 2012, Mr. Ra-born filed a Third Superseding Petition in which he asserted a products liability claim against Medtronic arising from the use of the InFUSE product in his June 12, 2007 surgery. Mr. Raborn |4alleged that Med-tronic “covered up and did not disclose that there have been many incidences of serious complications including occurrences of ectopic bone growth ..., inflammatory reactions, urinary problems, etc.— particularly when the product is used in an off-label fashion.” Mr. Raborn further alleged that following the off-label use of the Medtronic product in his surgery, he developed ectopic bone growth in his spine, demyelinating disease, additional bowel and bladder complications, inflammatory response, neural scarring, and further complications of Arachnoiditis. As a result of these complications, he alleged that he is disabled, has to use assistive devices for mobility, has developed a spinal fluid pressure problem, has developed mental fogginess, has to catheterize three to four times per day to treat urinary retention, and is in constant pain.
Medtronic filed a peremptory exception raising the objections of no cause of action and prescription on July 16, 2012. Med-tronic pointed to the express warnings contained in the FDA-approved InFUSE labeling that warned of the sort of adverse events Mr. Raborn experienced. Med-tronic introduced evidence in support of its motion, including the InFUSE package insert. This insert states, in part:

INDICATIONS:

The InFUSE Bone Graft/LT-CAGE™ Lumbar Tapered Fusion Device is indicated for spinal fusion procedures in skeletally mature patients with degenerative disc disease (DDD) at one level from L4-S1. DDD is defined as disco-genic back pain with degeneration of the disc confirmed by patient history and radiographic studies. These DDD patients may also have up to Grade I spondylolisthesis at the involved level.... The InFUSE Bone Graft/LT-CAGEtm Lumbar Tapered Fusion Device is to be implanted via an anterior open or an anterior laparoscopic approach.
[[Image here]]
1 .WARNINGS:
The safety and effectiveness of the InFUSE Bone Graft component ... used in surgical techniques other than [an] anterior open or anterior laparoscopic approaches have not been established. When degenerative disc disease was treated by a posterior lumber [sic] inter-body fusion procedure with cylindrical *1070 threaded cages, posterior bone formation was observed in some instances.

PRECAUTIONS:

[[Image here]]
Bone Formation
[[Image here]]
While not specifically observed in the clinical study, the potential for ectopic, heterotopic or undesirable exuberant bone formation exists.

ADVERSE EVENTS:

Potential Adverse Events:

The following is a list of potential adverse events which may occur with spinal fusion surgery with the InFUSE Bone Graft/LT-CAGE Lumbar Tapered Fusion Device. Some of these adverse events may have been previously reported in the adverse events table.
• Bone fracture.
• Bowel or bladder problems
• Cessation of any potential growth of the operated portion of the spine. Loss of spinal mobility or function.
• Change in mental status.
• Damage to blood vessels and cardiovascular system compromise.
• Damage to internal organs and connective tissue.
• Death.
• Development of respiratory problems.
• Disassembly, bending, breakage, loosening, and/or migration of components.
• Dural tears.
• Ectopic and/or exuberant bone formation.
• Fetal development complications.
• Foreign body (allergic) reaction.
• Gastrointestinal complications.
Is* Incisional complications.
• Infection.
• Insufflation complications.
• Neurological system compromise.
• Nonunion (or pseudarthrosis), delayed union, mal-union.
• Postoperative change in spinal curvature, loss of correction, height, and/or reduction.
• Retrograde ejaculation.
• Scar formation.
• Tissue or nerve damage.
After a hearing, the trial court sustained Medtronic’s exceptions of no cause of action and prescription. On the prescription issue, the court held that Mr. Raborn’s Third Superseding Petition stated a completely unrelated cause of action against a new defendant and therefore did not relate back to the original petition. The court farther found that although Mr. Raborn had no actual knowledge of the cause of action, he had constructive knowledge of a potential cause of action due to the warnings on the InFUSE product insert at the time of his surgery, and later due to a Wall Street Journal article and a shareholder lawsuit against Medtronic. Based on its finding that Mr. Raborn should have been alerted to a potential cause of action as of the time of his surgery, the court held that the doctrine of contra non valentem was inapplicable, that prescription began to run on the Medtronic claims on the date of his 2007 surgery, and therefore the Medtronic claims were prescribed one year from the date of the surgery. The trial court also sustained the exception raising the objection of no cause of action, but allowed Mr. Raborn an opportunity to amend his petition to attempt to state a cause of action in the event the prescription ruling was overturned on appeal. Mr. Raborn appealed the dismissal of his claims for prescription.
DISCUSSION
Louisiana Civil Code Article 3492 provides that delictual actions are subject *1071 to a liberative prescription of one year. This prescriptive period 17applies to all del-ictual actions, including those brought pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51-.60. Denoux v. Vessel Management Services, Inc., 07-0163, p. 4 (La.App. 4 Cir. 7/11/07), 964 So.2d 1081, 1084, affirmed in part, vacated in part on other grounds, 07-2143, pp. 7-8 (La.5/21/08), 983 So.2d 84, 89. Prescription commences to run from the day injury or damage is sustained. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. Cole v. Celotex Carp., 620 So.2d 1154, 1156 (La.1993) (citing McCray v. New England Ins. Co., 579 So.2d 1156, 1158 (La.App. 2 Cir.1991)).
Generally, the burden of proving an action is prescribed lies with the party pleading prescription. Hogg v. Chevron USA, Inc., 09-2632, p. 7 (La.7/6/10), 45 So.3d 991, 998. An exception to this general rule exists when the face of the petition shows that it is prescribed, in which case the burden shifts to the plaintiff to prove that prescription was interrupted or suspended. Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, 1275. Because Mr. Raborris claim against Med-tronic was clearly prescribed on the face of the petition, the burden is placed on Mr. Raborn to prove that prescription was interrupted or suspended.

Interruption of Prescription

Mr. Raborn first argues that the trial court erred in not finding that prescription on the Medtronic claim was interrupted by the timely filing of a suit against Dr. Albea. When the action asserted in an amended petition arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original petition. La. C.C.P. art. 1153. Pursuant to article |R1153, so long as a comparison of the amended petition to the original petition shows that the original petition gave fair notice of the factual situation out of which the amended petition arises, the amended petition will relate back to the date of the filing of the original petition and prescription with regard to the amendment is interrupted as of the filing date of the original petition. Reese v. State Dep’t of Pub. Safety & Corr., OS-1615, p. 6 (La.2/20/04), 866 So.2d 244, 248. Where there is some factual connexity between the original and amended assertions, together with some identity of interest between the original and supplemental party, an amendment should be allowed and excepted from the interests intended to be protected by the prescriptive statutes. Id. The essence of interruption of prescription is notice. Id. at p. 6, 866 So.2d at 249. Thus, the question before this court is whether the allegations of Mr. Raborn’s original petition sufficiently put Medtronic on notice that a products liability action against it was at issue in this case.
The trial court found that the 2006 surgery and subsequent procedures were completely unrelated to the off-label use of the InFUSE product in the 2007 surgery, and therefore prescription was not interrupted on the Medtronic claim by the filing of the malpractice suit. Mr. Raborn argues that but for Dr. Albea’s malpractice, the second surgery where the Medtronic product was used would not have been necessary. While that may be true, the products liability claim against Medtronic simply does not arise out of the same conduct, transaction, or occurrence as the medical malpractice claims asserted in the original petition, and the allegations of the *1072 original petition do not provide fair notice to Medtronic that a products liability action against it would be at issue. Thus, the trial court did not err in |9concluding that the claims against Medtronic do not relate back to the filing of the original petition.

Constructive knowledge

Mr. Raborn next argues that the trial court erred in finding that he had constructive knowledge of a claim against Medtronic so as to commence the running of prescription. He alleges that at the time he filed his original petition in October of 2009, he had difficulty walking, saddle pain, periodic incontinence, sexual dysfunction, and compression of the Cauda Equina, and at the time of his First Superseding Petition in October of 2010, he had been diagnosed with Cauda Equina Syndrome, cord compression, scarring of nerves, leg pain, buttock and saddle pain, tremors, sexual dysfunction, and bladder and bowel problems. However, since his doctors had not yet determined the cause to be the InFUSE product at the time of the filing of those petitions, he argues that he could not have been reasonably expected to know of his cause of action against Medtronic.
The doctrine of contra non va-lentem prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff. It is often difficult to identify a precise point in time at which the claimant becomes aware of sufficient facts to begin the running of prescription. In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La.1991). In Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La. 1987), the supreme court stated:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
110When prescription begins to run depends on the reasonableness of a plaintiffs action or inaction. Jordan, 509 So.2d at 423. As stated in Knaps v. B & B Chemical Co., Inc., 828 F.2d 1138, 1140 (5th Cir.1987) (decided shortly after Jordan and relying upon that case), the question is whether, in light of plaintiffs own information and the diagnoses he received, the plaintiff was reasonable to delay in filing suit.
Louisiana Code of Civil Procedure article 931 provides that evidence may be introduced on an exception of prescription. Where, as here, evidence is introduced at the hearing on a peremptory exception of prescription, the trial court’s findings of fact are reviewed under the manifest error-elearly wrong standard of review. Ba-bineaux v. State ex rel. Dept, of Tramp. & Dev., 04-2649, p. 3 (La.App. 1 Cir. 12/22/05), 927 So.2d 1121, 1123. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id.
The InFUSE product insert was introduced at the hearing held on exception of prescription. This insert, which was available to Mr. Raborn at the time of his surgery, informed him that the use of the product in his 2007 surgery was considered “off-label” and its safety and effectiveness had not been established. The insert also listed potential adverse events from use of the device, several of which were complaints Mr. Raborn listed in his original *1073 petition in 2009 and his First Superseding Petition in 2010: bowel or bladder problems, neurological system compromise, retrograde ejaculation, scar formation, and tissue or nerve damage. Given this evidence and the particular facts of this case, we do not find manifest error in the trial In court’s conclusion that the InFUSE product insert put Mr. Raborn on notice at the time of his surgery as to his potential claims against Medtronic.[2]

Texas Law

Finally, Mr. Raborn argues that the two-year Texas statute of limitations should have been applied to his claims against Medtronic, instead of Louisiana’s one-year prescriptive period, because his surgery was performed in Texas.
Louisiana Civil Code article 3549(B) provides that:
B. When the substantive law of another state would be applicable to the merits of an action brought in this state, the prescription and peremption law of this state applies, except as specified below:
(1) If the action is barred under the law of this state, the action shall be dismissed unless it would not be barred in the state whose law would be applicable to the merits and maintenance of the action in this state is warranted by compelling considerations of remedial justice.
Although Mr. Raborn argues that his claim would not be prescribed if the court would apply Texas’s two-year statute of limitations, since we have concluded that Mr. Raborn had constructive knowledge of his potential cause of action against Med-tronic at the time of his June 2007 surgery, and Mr. Raborn did not file his Third Superseding Petition stating a claim against Medtronic until May 18, 2012, the issue of which state statute applies is moot.
CONCLUSION
The judgment of the trial court dismissing Mr. Raborn’s claims against Medtronic on the grounds of prescription is affirmed. Costs of this appeal are assessed to Mr. Raborn.
AFFIRMED.
KUHN, J., Concurs in the Result.

. Although the decision of the medical review panel states that the dates of the alleged malpractice were 6/6/06 — 10/9/06, Mr. Raborn was not referred to Dr. Dunn until October of 2006 and the procedures performed by Dr. Dunn which Mr. Raborn allege amounted to malpractice were performed in March of 2007. Nevertheless, the Medical Review Panel decision addressed the discogram performed by Dr. Dunn in March of 2007 and found no deviation from the standard of care.

. Finding the InFUSE product label to be sufficient notice, we do not address nor do we express any opinion as to the Wall Street Journal article or the shareholders’ lawsuit.