700 So.2d 233 (1997)
JONES, WALKER, WAECHTER, POITEVENT, CARRERE AND DENEGRE, L.L.P.
v.
HOMESTEAD INSURANCE COMPANY.
No. 97-C-0710.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 1997.
Rehearing Denied October 31, 1997.
*234 Daniel Lund, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, for Relators Jones, Walker, Waechter, Poitevent, Carrere and Denegre, L.L.P. and Attorneys' Liability Assurance Society, Inc.
Elizabeth A. Alston, Maria Garcia Marks, Alston Law Firm, New Orleans, for Respondent Homestead Insurance Company.
Before BARRY, LANDRIEU and MURRAY, JJ.
MURRAY, Judge.
The law firm of Jones, Walker, Waechter, Poitevent, Carrere and Denegre, L.L.P. (Jones, Walker), seeks review of the trial court's refusal to maintain its exception of prescription to a legal malpractice claim asserted as a reconventional demand by its former client, Homestead Insurance Company (Homestead). For the reasons which follow, we grant the writ and reverse.
Prior to the enactment of La. R.S. 9:5605, a tort claim for legal malpractice generally had to be filed within one year of the date on which the client had knowledge of BOTH the wrongful conduct AND resultant appreciable harm, Braud v. New England Ins. Co., 576 So.2d 466 (La.1991); Rayne State Bank v. Nat'l Union Fire Ins. Co., 483 So.2d 987 (La.1986), but the point at which the one-year prescriptive period commenced was not otherwise limited by statute.
With the addition of § 9:5605 A in 1990, however, the legislature specified two restrictions concerning the delay for instituting a legal malpractice suit: first, that prescription would begin to run, at the latest, from the date the tortious act was discovered, without regard to when damage was incurred, and second, that regardless of when the malpractice is discovered, no claim may be filed more than three years after the wrongful conduct occurred.[1]Succession of Hellmers, 93-2386, p. 4 (La.App. 4th Cir. 5/26/94), 637 So.2d 1302, 1305; see also, e.g., Chaney v. State Dept. of Health & Human Resources, 432 So.2d 256 (La.1983) (interpreting the identical language in prescriptive statute for medical malpractice). In this case, the evidence presented below establishes that, without regard to either of these "new" restrictions, Homestead's legal malpractice claim was prescribed prior to September 1996, when it was asserted as a reconventional demand.
In October 1993, at a settlement conference in the underlying "Bob R" litigation, Homestead's general counsel informed Jones, Walker that it intended to reserve its rights against Cygnus Insurance Services, Ltd. in any settlement eventually reached. Jones, Walker responded by pointing out that, at least for purposes of settlement, a conflict of interest existed because it also represented Cygnus in the "Bob R" litigation and other matters. Jones, Walker then withdrew from the conference, and Homestead's general counsel had to negotiate on its own behalf. On October 29, 1993, Homestead paid $69,500 to American Eagle Marine, Inc., in exchange for American's release of both Homestead and Cygnus, among others, in the "Bob R" matter.
Jones, Walker represented Homestead at trial of the "Bob R" litigation, which began in October 1993, and resulted in judgment being entered on April 19, 1994, against Homestead for over $486,923 in accrued and continuing damages, attorney fees, penalties, costs and legal interest.
On May 11, 1994, Homestead notified Jones, Walker, in writing, that the law firm's handling of this matter on its behalf was severely compromised by the dual representation of Homestead and Cygnus and that Homestead would "look to Jones, Walker ... *235 for any damages resulting from any act, error and omission ..., including reasonable attorneys fees and costs." Homestead terminated the attorney-client relationship with Jones, Walker and informed it that another firm had been retained to appeal the "Bob R" judgment. Homestead, through its new counsel, suspensively appealed the adverse judgment, and posted a surety's bond for $945,662.40. Ultimately, the judgment was affirmed by the First Circuit at Homestead's cost in October 1995; the Supreme Court denied Homestead's writ application in January 1996.
Homestead's claim for legal malpractice against Jones, Walker was not asserted until September 1996, when it filed a reconventional demand in response to Jones, Walker's June 1994 suit for unpaid fees and costs. The evidence, as outlined above, establishes that Homestead was aware of the firm's alleged wrongful conduct and that it had incurred appreciable damages as of May 11, 1994, the date of its letter to Jones, Walker. These damages are itemized in paragraph VIII of the reconventional demand as all amounts paid to resolve the underlying claims, including the October 1993 settlement with American, as well as Homestead's expenses to appeal the "Bob R" judgment. Even had the appeal been successful none of these amounts could have been recovered. When Homestead "was compelled to incur and pay attorney's fees, legal costs and expenditures" it had suffered more than "nominal damages, speculative harm, or the threat of future harm." Braud, 576 So.2d at 468-69. Consequently, under either pre-1990 law or R.S. 9:5605, Homestead had one year from May 1994 to assert its claim against Jones, Walker.
Homestead contends that, as in Jure v. Barker, 619 So.2d 717 (La.App. 4th Cir.1993), its cause of action for legal malpractice did not accrue until the decision in the underlying suit became final, and the claim was timely filed within one year of that date. However, Jure is clearly distinguishable from the facts presented here. Jure specifically found that the suing client had not suffered any damages by having to appeal her loss in the underlying medical malpractice action, which apparently had been handled on a contingency fee basis.[2] 619 So.2d at 718, n. 1. Additionally, unlike the present case, the allegedly negligent attorneys in Jure continued to represent the complaining client, a well-established basis for the suspension of prescription in such cases.
We decline to follow the Fifth Circuit's holding in Reeder v. North, 96-165 (La.App. 5th Cir. 11/14/96), 683 So.2d 912, writ granted, 97-0239 (La.3/27/97), 692 So.2d 377, that a malpractice action exists only when the judgment giving rise to the malpractice becomes definitive, because we find nothing that would justify such a per se rule.[3] Instead, our view of the jurisprudence convinces us that the determination as to when the client's cause of action arose must be made on a case-by-case basis.
We find, therefore, that Homestead's reconventional demand for damages based upon Jones, Walker's allegedly tortious conduct in the "Bob R" litigation was not timely filed, either under La. R.S. 9:5605 or prior law. Accordingly, Homestead's challenge to the constitutionality of that statute, which was raised but not considered below, is moot.
Citing Ambrose v. Roberts, 393 So.2d 132 (La.App. 3d Cir.), writ denied, 394 So.2d 1234 (La.1980), Homestead next contends *236 that its claim has not prescribed because it has sued for breach of an express or implied warranty of full and impartial representation, which is subject to a ten-year prescriptive period. However, the jurisprudence establishes only two exceptions to the one-year limit for legal malpractice: (1) when the attorney promised a specific result, but failed to obtain that result; and (2) when the attorney agreed to perform work, but instead did nothing. Lima v. Schmidt, 595 So.2d 624, 628 n. 2 (La.1992); Barnett v. Sethi, 608 So.2d 1011, 1014 (La.App. 4th Cir.1992), writs denied, 613 So.2d 993, 994 (La.1993). Neither exception has been alleged to be applicable in this case.
Finally, Homestead argues that, because part of the relief it sought from Jones, Walker was reimbursement of the expenses it incurred to appeal the "Bob R" judgment, the claim it is asserting is for indemnity, subject to a different prescriptive period. Citing Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987), for the proposition that "a cause of action for indemnification ... does not arise until the underlying suit is concluded and the defense costs are paid," Homestead contends its cause of action thus did not arise until January 1996, when the "Bob R" litigation was concluded. This argument must fail as none of the pleadings suggest there was any contract under which Jones, Walker agreed to indemnify or hold Homestead harmless, in the "Bob R" case or otherwise. Applying the label "indemnity" or "costs of defense" to the damages sought does not convert a cause of action from alleged malpractice to contractual indemnity.
Jones, Walker's exception of prescription should have been maintained. Furthermore, because Homestead's claim for damages was prescribed before the reconventional demand was filed, Homestead has no cause of action against Jones, Walker's liability insurer. Therefore, the judgment below is reversed, and both the reconventional demand by Homestead Insurance Company against Jones, Walker, Waechter, Poitevent, Carrere and Denegre, L.L.P.,[4] and the third party demand by Homestead Insurance Company against Attorneys' Liability Assurance Society, Inc., are hereby dismissed with prejudice.
WRIT APPLICATION GRANTED; JUDGMENT REVERSED AND RENDERED.
BARRY, J., concurs with reasons.
BARRY, Judge, concurring with reasons.
This case is distinguishable from Jure v. Barker, 619 So.2d 717 (La.App. 4th Cir.1993), in which the plaintiff did not allege that she suffered damage as a result of the need to appeal the underlying action. Homestead alleged damages apart from the possible loss of the appeal, specifically, amounts paid to resolve the claims against Homestead; legal fees to Jones Walker; legal fees to appeal counsel; legal fees in the instant litigation.
That the defendant attorneys in Jure continued to represent the plaintiff was noted in a footnote but was not the basis of that holding. Jure, 619 So.2d at 719, n. 2.
Footnote 2 of the majority opinion is irrelevant. I do not think the "conceptual difference between a plaintiff's loss in the trial court ... and a defendant's trial loss" is a basis to distinguish the prescriptive period for a legal malpractice claim.
I respectfully concur in the result.
NOTES
[1] Homestead argues that because this suit was filed within three years of its discovery of a conflict of interest in October 1993, it was timely under the latter restriction. Opposition Brief at pp. 21-22. This position is supported neither by the statutory language nor the jurisprudence.
[2] Furthermore, there is a conceptual difference between a plaintiff's loss in the trial court, which results in a failure to obtain money allegedly due, as in Jure, and a defendant's trial loss, which results in a money judgment that must be paid or appealed, as here.
[3] We note that in reaching this conclusion in Reeder, p. 9, 683 So.2d at 916, the Fifth Circuit relied in part on this court's rationale, expressed in Braud v. New England Ins. Co., 562 So.2d 1116 (La.App. 4th Cir.1990), that, until the underlying suit is finally decided, a suit against the attorney would require the aggrieved client to take inconsistent positions concerning the validity of the judgment at issue. The Supreme Court expressly rejected this rationale when it reversed Braud, 576 So.2d at 469-470.

Reeder held in the alternative that the "continued representation rule" suspended the prescriptive period. Because Jones, Walker did not continue to represent Homestead, we need not determine in the present case whether that rule remains viable under R.S. 9:5605.
[4] We note that this ruling has no effect on Homestead's assertion of the alleged malpractice as a defense to the main demand. La.Code Civ. Proc. Ann. art. 424.