757 So.2d 145 (2000)
E. Elizabeth TURNBULL, et al.
v.
Charles THENSTED, et al.
No. 99-CA-0025.
Court of Appeal of Louisiana, Fourth Circuit.
March 1, 2000.
Rehearing Denied April 28, 2000.
*147 Louis R. Koerner, Jr., Law Office of Louis R. Koerner, Jr., New Orleans, Louisiana, and A.D. Freeman, Covington, Louisiana, Counsel for Plaintiffs/Appellants.
Thomas M. Richard, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, L.L.P., Mandeville, Louisiana, Counsel for Defendants-Appellees.
Lawrence J. Ernest, Christovich & Kearney, L.L.P., New Orleans, Louisiana, Counsel for Defendants-Appellees.
John V. Baus, Jr., David S. Daly, Jennifer C. deBlanc, Baus, Hammond & Daly, L.L.P., New Orleans, Louisiana, Counsel for Defendants/Appellees.
(Court composed Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS, Sr., and Judge ROBERT A. KATZ).
BAGNERIS, Judge.

STATEMENT OF THE CASE
This case involves the question of whether or not a legal malpractice suit was timely filed. In 1984, a new limited partnership syndication named Courtside Limited (hereinafter "Courtside") was created by Michael Smuck, Mark Strauss, Joseph Michelli, and Ronald Ellington (hereinafter "Smuck, et al."). It also conducted business under the name of The Equity Group. Some notable entities associated with the endeavor were Peat Marwick Mitchell & Co., accountants for the endeavor; Sessions & Fishman, attorneys for the endeavor; and The Home Insurance Company (hereinafter "Home"), a bonding company for The Equity Group; and The Graham Company (hereinafter "Graham"), the broker for Home's participation in the endeavor. Approximately forty other individuals participated in the Courtside endeavor by investing some or all of their personal fortunes (hereinafter "the Courtside Plaintiffs").
After some time, the Courtside Plaintiffs became suspicious of the legitimacy of the Courtside endeavor and formed a four-person committee (hereinafter "The Courtside Plaintiffs' Committee") to find an attorney to bring suit against Smuck, et al, The Equity Group, Home, Graham, Sessions and Fishman, and Peat Marwick Mitchell and Co. (hereinafter collectively "the Defendants"). The Courtside Plaintiff's Committee ultimately decided on Attorney Charles Thensted (hereinafter "Mr. Thensted") to undertake the suit. Notably, from August 1986 until November 1989, Louis Koerner, Jr. (hereinafter "Mr. Koerner"), an attorney and a Courtside Investor, served as a member of the Courtside Plaintiffs' Committee, which interviewed and hired Mr. Thensted as their attorney.
In August and September 1989, after Mr. Thensted had negotiated a settlement on behalf of the Courtside Plaintiffs resulting in significant restitution and the voluntary dismissal of all of the Courtside Defendants with the exception of Home and Graham, the late Honorable Veronica Wicker granted motions for summary judgment filed by Home and Graham, dismissing the remaining claims of the Courtside Plaintiffs, including those of E. Elizabeth Turnbull (hereinafter "Ms. Turnbull") and Mr. Koerner. In addition, Judge Wicker found that the Plaintiffs owed contractual remuneration to Home. The summary judgments were appealed but to no avail. On September 28, 1993, the summary judgments were affirmed. See Abbott v. Equity Group, Inc., 2 F.3d 613 (5 Cir.1993) cert. denied, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).
On December 30, 1992, Ms. Turnbull filed her Original malpractice Petition against Mr. Thensted and his former firm, *148 Gelpi, Sullivan, Carroll & Gibbens. At that time, Ms. Turnbull's Courtside appeal was still pending. In this Petition, Ms. Turnbull alleged principally that Mr. Thensted had failed to assemble and present the facts and law applicable to aiding and abetting, resulting in the summary judgment motions that had been decided more than three years earlier.
On January 10, 1994, Peggy J. Koerner (hereinafter "Ms. Koerner"), wife of the late Louis Koerner, Sr., filed her Original malpractice Petition. Notably, both Ms. Turnbull and Ms. Koerner's Original malpractice Petitions were filed by attorney, A.D. Freeman, Jr. (hereinafter "Mr. Freeman").
In response to Ms. Turnbull's and Ms. Koerner's Original and Supplemental and Amending malpractice Petitions, Mr. Thensted filed Exceptions of Prescription and No Cause of Action. On September 6, 1995 and May 13, 1996, Ms. Turnbull and Ms. Koerner filed Supplemental and Amending Petition contending that Mr. Thensted neither understood or properly argued Rule 10b-9 of the Securities and Exchange Commission. They also asserted that Mr. Thensted's failure to include a specific citation to Rule 10b-9 in the Courtside Complaint permitted Judge Wicker to grant the summary judgment motions in favor of House and Graham. Finally, they claimed that Mr. Thensted accepted a retainer when he was allegedly "insufficiently familiar with securities law" and "without taking proper steps to determine the precise amount of insurance remaining," and failing to allocate settlement funds. It is uncontested that Mr. Thensted negotiated the Courtside settlements shortly before the summary judgment motions were granted in August and September 1989. His retainer was paid in 1986.
On May 1, 1998, Ms. Turnbull and Ms. Koerner filed additional Supplemental and Amended Petitions alleging that, while the Courtside Plaintiffs' Committee was interviewing Mr. Thensted in 1986, he misrepresented his experience, his knowledge of securities law, and his health.
On June 1, 1998, the Exceptions of Prescription and No Cause of Action were tried before the Honorable Gerald P. Fedoroff. Ms. Turnbull, Mr. Koerner, and Mr. Thensted all testified at the hearing. Many exhibits, including much of the extensive correspondence and pleadings that were exchanged throughout the course of the Courtside litigation between Ms. Turnbull, Mr. Thensted, Mr. Freeman, and Mr. Koerner were admitted into evidence. Judge Fedoroff took the matter under advisement and later ruled in favor of Mr. Thensted, upholding the Exceptions.
On September 15, 1998, Judge Fedoroff issued his written reasons for sustaining the Exceptions. Judge Fedoroff concluded that the three year limitation period of LSA-R.S. 9:5605 A barred Mr. Koerner's suit since Mr. Thensted ceased representing Louis Koerner, Sr. on November 14, 1989, and the original Koerner malpractice suit was not filed until more than three years later on January 10, 1994.
In addition, Judge Fedoroff rejected the Courtside Plaintiffs' contention that the application of LSA-R.S. 9:5605 was unconstitutional since the three-year grace period of LSA-R.S. 9:5605 B was sufficient to prevent a constitutional violation.
On September 30, 1998, Judge Fedoroff amended his order to assess Mr. Thensted's costs against the Courtside Plaintiffs and to dismiss the entire suit as prescribed.
The Courtside Plaintiffs filed a Devolutive Appeal from this judgment on October 1, 1998.

LAW AND ARGUMENT
The discretion allotted a trier of fact is great. The standard of review of a trial court's finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La. *149 1973); Hoerner v. Wesley-Jensen, 95-0553 (La.App. 4 Cir. 11/20/96), 684 So.2d 508. Likewise, the trial court's factual determinations regarding preemption/prescription should not be reversed in the absence of manifest error, as the issue to be decided by the appellate court is not whether the trier of fact was right or wrong, but rather whether the fact finder's conclusion was a reasonable one. Cosse v. Allen-Bradley Co., 601 So.2d 1349 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991). Even when an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Thus, an "appellate court's disagreement with the trial court, alone, is not grounds for substituting its judgment for that of the trier of fact." Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311, citing Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983).
In the present case, we find that the trial judge was presented with two permissible yet different views as to the peremption/prescription period in this malpractice suit. Upon hearing the law, the evidence, and the arguments of both sides, the trial court ruled in favor of Mr. Thensted. We agree with the trial court as we have found no additional evidence that would lead us to second guess the trial court's judgment. Thus, we find that Judge Fedoroff's reasonable evaluations of the evidence and testimony regarding peremption/prescription were neither manifestly erroneous nor clearly wrong.

PRESCRIPTION
The issue is whether the trial court erred in granting the exception of prescription. LSA-R.S. 9:5605 specifies the limitation periods applicable to legal malpractice actions. LSA-R.S. 9:5605 A provides that there are two potential limitation periods governing legal malpractice actions: 1 year from when the alleged negligence is or should have been discovered or 3 years from the date of the alleged negligence, regardless of when it was discovered. Jones, Walker, Waechter, Poitevent, Carrere and Denegre, L.L.P. v. Homestead Insurance Company, 97-0710 (La.App. 4 Cir. 9/10/97), 700 So.2d 233, 234; Taussig v. Leithead, 96-960 (La.App. 3 Cir. 2/19/97), 689 So.2d 680. LSA-R.S. 9:5605 B provides that the provisions of this statute are remedial and apply to all cases of malpractice "without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993". LSR.S. 9:5605 B. Mr. Thensted asserts that Reeder v. North, 97-0239 (La.10/21/97) 701 So.2d 1291, is the most authoritative guidance for the interpretation of LSA-R.S. 9:5605. He proffers that the Reeder court strictly applied the statutory language specifying "the date of the alleged act, omission, and neglect" as the triggering event for the running of the 3-year limitation period. Moreso, he contends that the Reeder court determined that the "continuous representation rule" under the doctrine of contra non valentum did not apply, as a peremptive period may not be interrupted or suspended. Id. at 1298.
Notably, Mr. Thensted avers that Reeder rejected the pre-LSA-R.S. 9:5605 analysis which fixed the running of prescription not from the time of the negligent act of malpractice but from the time that "appreciable and actual harm" began to flow from the underlying malpractice either through a definitive judgment or conclusion of an appeal. Id. at 1298. In Reeder, the court recognized that the attorney's act of filing his client's suit in federal court and his failure to include certain state law claims in 1989 as the critical event for operation of the statute. The Reeder court *150 maintained that on that date, although the client wasn't aware of his attorney's negligence nor did any appreciable harm inure to him, the 3-year preemptive period began. Consequently, the Reeder court held that the filing of the legal malpractice action in 1994 was clearly peremptive by LSA-R.S. 9:5605. Id. at 1294.
Mr. Thensted urges that Louisiana courts have strictly construed the "grace period" of LSA-R.S. 9:5605 B, which requires that any claim arising out of malpractice occurring prior to September 7, 1990 be filed, at the latest, by September 7, 1993. Drennan v. Killian, 97-1120 (La. App. 5 Cir.1998) 712 So.2d 978; Jones, Walker, 97-0710 (La.App.4Cir.9/10/97), 700 So.2d at 233; Morgan v. Campbell, Campbell & Johnson, 27,390 (La.App. 2 Cir. 9/27/95), 661 So.2d 540. Conversely, the Plaintiffs urge that Reeder is not applicable to this matter. We disagree.
In the instant case, Ms. Turnbull filed her Original malpractice Petition on December 30, 1992 alleging that Mr. Thensted failed to assemble the facts and law which led to the summary judgment rulings in August and September 1989, as well as failing to advise her that she should sue her CPA, James Sanchez. Ms. Turnbull filed a Supplemental and Amending Petition on September 6, 1995 alleging new claims related to excessive legal fees, improper settlement negotiations, a failure to account for the dispersal of settlement funds, and additional acts of negligence related to Mr. Thensted's representation.
On May 1, 1998, Ms. Turnbull filed a Third Amended Petition alleging that Mr. Thensted misrepresented his knowledge of and experience with securities law and his health during the 1986 interview with the Courtside Plaintiffs' Committee.
Prescriptions commences to run when a claimant knew or should have known of the existence of facts that would have enabled him to state a cause of action for legal malpractice. Olivier v. Poirier, 563 So.2d 1227 (La.App. 1 Cir.1990), writ denied, 568 So.2d 1054 (La.1990). The standard imposed is that of a reasonable man. Griffin v. Kinberger, 507 So.2d 821 (La.1987).
The standard is designed to establish a rule that any plaintiff who had knowledge of facts that would place a reasonable man on notice that malpractice may have been committed shall be held to have been subject to the commencement of prescription by virtue of such knowledge even though he asserts a limited ability to comprehend and evaluate the facts. Taussig, 96-960 (LA.App.3Cir.2/19/97), 689 So.2d at 682. The focus is on the appropriateness of the claimant's actions or in actions. Ledbetter v. Wheeler, 31-357, (La. App. 2 Cir. 12/9/98), 722 So.2d 382. While hiring an attorney is evidence of the awareness of a potential legal malpractice claim, it is not the earliest date prescription begins to run, since such an awareness must precede the formation of an intent to consult an attorney. See generally, Bourque v. Hoychick, 97-627, (La. App. 3 Cir.1997), 704 So.2d 815, 817.
Ms. Turnbull's petitions alleged claims which fall into five general categories: (a) a failure to account, (b) excessive fees, (c) the Sanchez claim, (d) a failure to assemble the facts and the law, and (e) misrepresentation claims.
First, Ms. Turnbull alleged in her Amended Petition filed on September 6, 1995, that Mr. Thensted failed to account for settlement proceeds received in October 1989. This claim arose from a September 10, 1989 letter that Mr. Thensted sent to all the Courtside Plaintiffs regarding the settlements with the Courtside Defendants. Mr. Thensted maintains that the limitation period on the "failure to account claim" commenced with Ms. Turnbull's receipt of the September 10, 1989 letter as it was from this point that the distribution of the settlement funds became an issue. Additionally, he asserts that the limitation period for this claim could have started to *151 run on July 23, 1991, when Mr. Freeman advised Mr. Thensted on Ms. Turnbull's behalf that she was dissatisfied with the disbursement. Notwithstanding, under either date, he concludes that the "failure to account claim" was untimely filed. We agree.
We find that Ms. Turnbull inexcusably allowed 15 months to elapse before she filed her Original malpractice suit against Mr. Thensted after verbally expressing her disapproval of his work product. Moreover, we find that she did not allege the "failure to account claims" until September 6, 1995, more than 3 years after the September 10, 1989 letter and the July 23, 1991 conversation between Mr. Thensted and Mr. Freeman.
Secondly, Ms. Turnbull filed her First Amended Petition on September 6, 1995, alleging that Mr. Thensted represented to the Plaintiffs' Committee that his fees would not exceed $250,000. Mr. Thensted maintains that Ms. Turnbull knew on September 3, 1986 when she paid a $9,000 assessment fee and signed an engagement letter that there would be no guarantee of the amount of legal fees to be paid for his services. Moreover, he avers that she complained to him in a March 10, 1988 correspondence that she was paying too much in legal fees. Therefore, he concludes that Ms. Turnbull was "on guard" about what she believed to be excessive fees as far back as 1988, but negligently waited over seven years before asserting the "excessive fee" claim. We agree. Thus, we find that this claim was untimely filed on September 6, 1995.
Third, we find that the Sanchez claim is not primarily of issue here, and we opt not to comment.
Ms. Turnbull alleged in her Original Petition that Mr. Thensted's failure to assemble and present the facts and the law applicable to aiding and abetting the securities fraud is fault, negligence and substandard legal practice. Mr. Thensted asserts that the last Courtside Complaint he filed was on March 20, 1987; the only settlements that he negotiated on behalf of Ms. Turnbull were reached in August and September of 1989; and that the summary judgments dismissing the Courtside Plaintiffs' claims against Home and Graham and the granting of Home's Motion to Enforce the indemnity agreement were entered in August and September of 1989 with detailed Reasons for Ruling entered on January 8, 1990. Hence, he proffers that Ms. Turnbull had actual, constructive, and imputed knowledge of these facts at or near the time they occurred and thus the filing of her Original malpractice suit on December 20, 1992 was untimely.
Alternatively, Ms. Turnbull urges that she was justified in waiting to sue Mr. Thensted because a final judgment was not rendered until January 1992, and that until that time, he still represented her. Inversely, Mr. Thensted avers that under LSA-R.S. 9:5605, it is the discovery of the tortious act that triggers the running of the limitation period and an alleged victim of malpractice should not sit and wait for a definitive judgment in the underlying suit before taking action. Moreover, he asserts that Reeder rejected the argument that the limitation period did not run until the "facts ripened into a viable cause of action to support a lawsuit." Reeder, 97-0239 (La.10/21/97), 701 So.2d at 1295-96. We agree.
We find that Ms. Turnbull could have filed suit against Mr. Thensted at any time after the summary judgment rulings that was within the applicable prescriptive period. However, and for whatever unfortunate reasons, she chose to wait until December 20, 1992 to file suit. Therefore, this Court maintains that in the end the continuous representation doctrine did not keep Ms. Turnbull from suing Mr. Thensted, and likewise, she should not be allowed to assert it in her defense today. Thus, we find that her suit was untimely filed.
Finally, both Ms. Turnbull and Mr. Koerner filed Amending pleadings on *152 May 1, 1998 alleging in identical claims that Mr. Thensted misrepresented his knowledge and experience with securities litigation, his experience as a litigator in general, and his heart condition to the Courtside Plaintiffs Committee.
Mr. Thensted refutes all of these contentions. Moreover, he asserts that the Courtside Plaintiffs' Committee was aware of his heart condition as Dr. Bluth, a committee member and physician, questioned him about it at a committee meeting. Next, he asseverates that Mr. Koerner began to question his work and express disapproval with his general performance by the summer of 1989. Thereafter, Mr. Koerner called for Mr. Thensted's replacement as trial counsel at a October 17, 1989 meeting of all the Courtside Plaintiffs. Consequently, Mr. Thensted argues that by October 1989, Mr. Koerner and Ms. Turnbull had sufficient direct and/or imputed knowledge to start prescription running on the misrepresentation claims to be filed in any subsequent malpractice suit. We agree.
We find that because this petition was filed on May 1, 1998, more than eight years after Ms. Turnbull and Mr. Koerner knew or should have known of Mr. Thensted's alleged shortcomings, it has prescribed. Thus, we hold that the misrepresentation claims are barred by the 3-year limitation period, notwithstanding the time that they were discovered.
In conclusion, we find that the trial evidence establishes that starting in December 1986, Ms. Turnbull began receiving legal advice from attorneys other than Mr. Thensted, specifically William Neilson and Mr. Freeman. However, and much to the surprise of this Court, Ms. Turnbull did not file her Original malpractice Petition until December 30, 1992, some three years after the termination of Mr. Thensted's counsel by the Courtside Plaintiffs' Committee and some 6 years after her initial disapproval of his work and acquisition of new legal counsel. We find under those facts and circumstances, Ms. Turnbull's cause of action had prescribed.
The legal malpractice claims of Peggy Koerner and Louis Koerner, Jr. mirror those of Ms. Turnbull. Notwithstanding, the Koerners have advanced primarily two arguments: (1) the unconstitutionality of the Reeder decision and the retroactive application of LSA-R.S. 9:5605, and (2) the misrepresentation claims against Mr. Thensted for purposes of LSA-R.S. 9:5605 E. The Koerner's claim that Jure v. Barker, 92-1688 (La.App. 4 Cir.5/27/93), 619 So.2d 717, overruled by Reeder, supra, 701 So.2d at 1298 led them to delay the filing of their malpractice claims until the resolution of the matter on appeal. Moreover, they argue that the 3-year grace period of LSA-R.S. 9:5605 B is unconstitutional.
Alternatively, Mr. Thensted charges that Reeder effectively rejects the holding of Jure and fixes the running of prescription from the time of the alleged malpractice, rather than the conclusion of an appeal. In addition, he asserts that even if Jure were still good law today, it would not save the Koerner's claims. Citing Jones, Walker, Mr. Thensted proffers that "... there is a conceptual difference between a plaintiffs loss in the trial courts, which results in a failure to obtain money allegedly due, as in Jure, and a defendant's trial loss, which results in a money judgment that must be paid or appealed, as here." Jones, supra, 700 So.2d at 234. He contends that the Jones, Walker court observed that as the allegedly negligent attorney no longer represents the complaining client on appeal, there is no basis for the suspension on appeal. Jones, supra, at 234.
Applying the Jones, Walker reasoning to the case at bar, Mr. Thensted advances that Mr. Koerner and the other Courtside Plaintiffs became obligated to pay Home after the granting of the summary judgment motions in August and September 1989. Moreover, in October 1989, at a meeting of all the Courtside Plaintiffs, *153 which was attended by Ms. Turnbull, Mr. Koerner called for the replacement of Mr. Thensted as trial counsel. Officially on November 14, 1989, the attorney-client relationship between Mr. Thensted and Louis Koerner, Sr. was terminated, and Mr. Koerner became the latter's counsel of record in this litigation as they were displeased with his handling of the case. Thus, Mr. Thensted contends that the Koerners alleged reliance on Jure is completely misplaced. He also submits that their constitutional argument must fail. We agree.
We opine that the attorney-client relationship between the Koerners and Mr. Thensted ended on November 14, 1989, thus we will presume to the benefit of Mr. Koerner that he became aware of Mr. Thensted's alleged malpractice at that time. Thus, we conclude that the prescriptive period on the malpractice cause of action began to run from this date through to its expiration date on November 14, 1990. Nevertheless, Mr. Koerner did not file this malpractice suit until January 10, 1994, more than 3 years after Mr. Thensted's termination. Thus, we find that the Koerner's Original malpractice suit was untimely filed.
Moreover, we acknowledge that the purpose behind the legislative enactment of the 1992 amendments to LSR.S. 9:5605, providing for its retroactivity, was to avoid unconstitutionally quashed, vested rights. Thus, a statute of limitations which shortens existing periods of limitations will not violate the constitutional prohibition against divesting a vested right provided it allows a reasonable time for those affected by the act to assert their rights. Lott v. Haley, 370 So.2d 521, 523-524 (La.1979). We agree with the Defendants that the Koerners had until September 7, 1993, or a reasonable period of time, within which to file suit on claims that were not "discovered" before September 7, 1990. Nevertheless, the Koerners waited well beyond the September 7, 1993 deadline to file this suit. As a result, we find that their suit was untimely filed and their constitutional argument without merit.

CONCLUSION
Therefore, we find that the trial court correctly ruled on all issues of peremption and prescription effecting the Courtside Plaintiffs in their malpractice suit against their former attorney, Mr. Thensted. It is for these reasons that we affirm the decision of the trial court and hold in favor of Mr. Thensted, the Defendant/Appellee.
AFFIRMED.
MURRAY, J., concurs in part and dissents in part with reasons.
MURRAY, J., concurring in part and dissenting in part.
Although I agree with the majority's conclusion that the Koerner's suit was correctly dismissed as untimely, I must respectfully dissent from the decision to affirm the dismissal of Ms. Turnbull's claims.
It is undisputed that Louis R. Koerner, Sr. terminated his attorney-client relationship with Mr. Thensted in November 1989. Furthermore, the testimony and evidence presented at the hearing on the exception establishes that the Koerners had sufficient knowledge of Mr. Thensted's allegedly tortious acts, as well as the resultant losses, no later than January 1992. However, the Koerners failed to institute legal action against Mr. Thensted until almost two years later, in January 1994. On these facts, I find that this suit is not only prescribed under La. R.S. § 9:5605, as enacted in September 1990 and as amended in 1992, but is untimely under the general prescriptive principles that applied prior to the 1990 legislation. Lima v. Schmidt, 595 So.2d 624 (La.1992). Thus, because the enactment of the statute has not deprived the Koerners of a cause of action that otherwise could be prosecuted, it is not unconstitutional as applied here. In addition, Mr. Thensted's alleged misrepresentations *154 regarding his qualifications, competence and health cannot be seen as "fraud" so as to extend either the jurisprudential or statutory prescriptive periods. Therefore, the trial court correctly dismissed the Koerners' suit as prescribed.
However, the evidence and testimony concerning Ms. Turnbull's knowledge and understanding of the Courtside proceedings does not, in my view, support the conclusion that all of her claims against Mr. Thensted had prescribed prior to December 1992, when her suit was filed.[1] Instead, it was shown only that she had made repeated inquiries regarding attorney fees and that by mid-1990 she had consulted other attorneys about Mr. Thensted's failure to sue her former CPA, Mr. Sanchez. However, none of the evidence suggests that a person with a background, education and experience similar to Ms. Turnbull's would have had reasonable grounds to question Mr. Thensted's competence until July 1991, when her personal attorney wrote a letter stating his belief that "Thensted is not up to the Courtside case."
Within six months of receiving this opinion, Ms. Turnbull retained new counsel to review the Courtside pleadings on her behalf. However, it was not until after the federal district court's final judgment was rendered on January 31, 1992 that Ms. Turnbull learned that Mr. Thensted had apparently ignored an arguably viable basis for recovery in that litigation. See Abbott v. Equity Group, Inc., 2 F.3d 613, 628-29 (5th Cir.1993), cert. denied, 510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). She soon discharged Mr. Thensted, and her new attorneys promptly pursued the addition of the omitted claim by post-judgment proceedings and appeals. Id. However, unlike the Koerners or the plaintiff in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, Ms. Turnbull did not wait for a final, definitive adverse judgment in the underlying case. Instead, she filed this legal malpractice suit against Mr. Thensted in December 1992, less than a year after her discovery of the alleged act, omission or neglect that had caused her loss and less than a year after she had terminated the attorney-client relationship. More significantly, Ms. Turnbull's suit for negligent conduct that occurred prior to September 7, 1990 was filed well before September 7, 1993, the end of the "grace period" provided by the 1992 amendment to R.S. § 9:5605.
For these reasons, I find the trial court's conclusion that "[Ms.] Turnbull should have filed suit by January 8, 1991" to be manifestly erroneous and without evidentiary support. Furthermore, on the facts established at the hearing on the exception, I must disagree with the legal determination that all of Ms. Turnbull's claims for malpractice are either prescribed or perempted under R.S. § 9:5605, as interpreted in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. Therefore, I respectfully dissent from the majority's decision to affirm the dismissal of Ms. Turnbull's suit in its entirety.
NOTES
[1] Although some of Ms. Turnbull's claims were added and/or clarified by her subsequent amending petitions, all arise from the same transaction or occurrence, i.e., Mr. Thensted's conduct during his representation of this plaintiff in the Courtside matter. Therefore, all claims must be considered to have been filed in December 1992. La.Code Civ. Proc. art. 1153; Moore v. Gencorp, Inc., 93-0814, p. 6 (La.3/22/94), 633 So.2d 1268, 1271-72, and cases cited therein.