813 So.2d 524 (2002)
Donald John SCHULINGKAMP, et al.
v.
OCHSNER CLINIC, etc., et al.
No. 01-CA-1137.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2002.
Rehearing Denied April 29, 2002.
Camilo K. Salas, III, and David A. Dalia, New Orleans, LA, for Appellant.
*525 Charles F. Gay, Jr., Amy H. Lambert, Elisia E. Shofstahl, New Orleans, LA, for Appellee.
Composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
EDWARDS, Judge.
Plaintiffs/ Appellants appeal the trial court's ruling that their claim against defendant, Ochsner Clinic, L.L.C., had prescribed pursuant to the Louisiana Medical Malpractice Act. For the following reasons, the judgment of the trial court is affirmed.
In 1989, plaintiffs filed this action against several defendants for the wrongful death and unauthorized organ harvesting on the body of Donald Schulingkamp, Jr. Defendant, Ochsner Clinic, L.L.C., ("Ochsner"), filed an exception of prematurity and was dismissed in March of 1990, without prejudice, by consent judgment.[1] In the years that followed, other defendants to this action were dismissed, resulting in two separate appeals by plaintiffs to this Court.[2]
On June 30, 1998, nearly 11 years after the alleged act of malpractice forming the basis of this suit, plaintiffs made a request to the Louisiana Patient's Compensation Fund to convene the formation of a Medical Review Panel in regard to their claim against Ochsner. Ochsner filed an exception of prescription, which the trial court granted after a hearing on May 18, 2001. Plaintiffs timely filed this appeal.

LAW AND ANALYSIS
In their first three assignments of error, plaintiffs argue that Ochsner was granted its exception of prescription based upon the trial court's misconception that the plaintiffs had abandoned their suit. In light of the following findings in regard to plaintiffs' fourth assignment, however, we will pretermit discussion on those issues related to abandonment. We also note that plaintiffs' fifth assignment of error is moot, as the record has been supplemented with their opposition memorandum.
In their fourth assignment of error, plaintiffs assert that they are "entitled to the benefit of a strict construction of the language of the original consent judgment of prematurity, preserving their claim until after the medical review panel determination is completed." Plaintiffs further argue that the parties "did not agree to any particular time limit on the completion of these proceedings." Conversely, Ochsner argues that the consent judgment entered into between the parties is clear, that the case was being dismissed until the medical malpractice provisions were followed, and that plaintiffs never followed those provisions.
In Turnbull v. Thensted,[3] the court, citing the Louisiana Supreme Court's holding *526 in Canter v. Koehring Company,[4] recognized that "the Standard of Review of a trial court's finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong." In this case, the trial court specifically found that the basis for prescription was that the plaintiffs had not complied with the provisions of the Medical Malpractice Act.
LSA-R.S. 9:5628 details the time allotment for filing medical malpractice actions in Louisiana, and reads in relevant part:
A. No action for damages for injury or death against any physician ... duly licensed under the laws of this state ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect. [Emphasis added]
LSA-R.S. 40:1299.47(B)(1)(a)(i) provides, however:
No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.
We first consider plaintiffs' argument under this assignment that the 1990 consent judgment somehow preserved indefinitely their ability to file a medical malpractice claim against Ochsner beyond the time limitations set forth by statute.
The consent judgment in question, signed on March 28, 1990, reads:
"An Exception of Prematurity in the above-captioned and entitled matter was filed by defendant, Ochsner Clinic, on January 10, 1989 to dismiss this lawsuit because the provisions of La. R.S. 40:1299.41 et seq. have not been completed, as the Medical Review Panel has not yet convened, nor a decision rendered. The Court is hereby advised that the plaintiffs, Donald J. Shulingkamp and Donna Shulingkamp, through their undersigned counsel, and in consideration of the documents filed by the defendant, has [sic] consented to the entry of an order dismissing this lawsuit without prejudice until such time as the proceedings before the Medical Review Panel has been completed." [Emphasis provided].
A consent judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing hope of gain against fear of loss. It has binding force from the presumed voluntary acquiescence of the parties, not from the adjudication by the court.[5] La. C.C. Art. 7 states however that, "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest."[6] Article 7 further provides that an act in derogation of such laws is an absolute nullity. While the exact *527 time that plaintiffs would have to file a request to convene a medical review panel is not contained in the consent judgment, it is clear according to the above cited codal article that the parties could not have agreed to extend the running of prescription beyond what was anticipated by statute.
We next consider the issue of whether plaintiffs have interrupted prescription, as contemplated by the Medical Malpractice Act, to the extent that it would allow them to file a request to convene a panel nearly 11 years after the act of malpractice. At the time of Ochsner's dismissal in 1990, Hernandez v. Lafayette Bone & Joint Clinic[7] was a leading case on the issue of interruption of prescription against defendants to which LSA-R.S. 40:1299.47 is applicable. In Hernandez, the plaintiff's malpractice case was dismissed without prejudice for prematurity. The Court held that the plaintiff would have then had one year within which to file another suit, unless something happened in the meantime to interrupt prescription. The court found that when Hernandez did timely file a request to form a review panel, he triggered the suspension provisions of LSR.S. 40:1299.47(A)(2), which had the effect of postponing the commencement of the new one year prescription for as long as the suspension was in effect. Using the same analysis in this case, plaintiffs' claim clearly would have prescribed within one year of the consent judgment that dismissed Ochsner from the suit when they did not timely convene a medical review panel.
Plaintiffs contend, however, citing the Louisiana Supreme Court case of White v. West Carroll Hospital,[8] that the claims which remained pending against all of the other parties in this case sufficed to interrupt prescription against Ochsner. In White, the court noted, as we did in Tuazon v. Eisenhardt,[9] that pursuant to La. C.C. Art. 3463, a timely filed suit pending against one solidary obligor continues the interruption of prescription as to all purported solidary obligors. We note, however, that White, as well as the case upon which it is based, Hebert v. Doctors Memorial Hospital,[10] does not specifically address the issue of whether a pending action against in solido defendants suspends the mandate of LSA-R.S. 40:1299.47(B)(1)(a)(i) and LSA-R.S. 9:5628, requiring plaintiffs to convene a Medical Review Panel within one year of the date of the alleged injury against a medical provider such as Ochsner.[11]
Under the version of the Medical Malpractice Act in effect at the time of the alleged malpractice, LSA-R.S. 40:1299.41(G) allowed the suspension of prescription with regard to certain solidary obligors as follows:
... the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review shall be suspended for a period of ninety days after a panel is formed under the provisions of this Part, provided a claim is made against the in solido obligor either under *528 the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part, the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen.
The Second Circuit in Wilkes v. Carroll[12] noted the legislative changes to the prescriptive portions of the Medical Malpractice Statute:
The applicable sections of the Medical Malpractice Act were amended in 1991. LSA-R.S. 40:1299.47 currently provides, in pertinent part, that the filing of the request for a review of a claim shall suspend the time within which suit must be instituted until ninety days following notification to the claimant or his attorney of the issuance of the opinion by the medical review panel, rather than formation of the panel, as provided under the former law. This court has held the amendment not to be retroactive.
In both versions of the malpractice statute, as it applies to solidary obligors, it is notable that a prerequisite to the interruption of prescription requires that a panel has been convened to review the plaintiffs' claim.
In LeBreton v. Rabito,[13] a case decided after White and which specifically overruled Hernandez, the Louisiana Supreme Court addressed the issue of whether it was necessary that the general provision on the interruption of prescription found in La. C.C. art. 3462 be applied simultaneously with the specific provision regarding the exception of prescription contained in LSA-R.S. 40:1299.47(A)(2)(a) of the Louisiana Medical Malpractice Act. The court concluded in LeBreton that "the specific statutory provision providing for the suspension of prescription in the context of medical malpractice should have been applied alone, not complimentary to the more general codal article which addresses interruption of prescription."[14] The court further held that the plaintiff's prematurely filed lawsuit could not be simultaneously utilized with the special medical malpractice legislation to defeat the defendant's peremptory exception of prescription.[15]
The court in LeBreton reasoned:
Rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. State ex rel. Bickman v. Dees, 367 So.2d 283 (La. 1978); Esteve v. Allstate Ins. Co., 351 So.2d 117 (La.1977).[16]
The court further stated that it sought with its ruling to eliminate an "anachronistic benefit" of additional prescription to those who did not first submit their claim to a medical review panel.
In this case, as in LeBreton, there are two statutes dealing with essentially the same subject matter. Plaintiffs argue, pursuant to La. C.C. art. 3463, that prescription against Ochsner was interrupted for as long as the suit against the remaining obligors was pending. However, to follow 3463, as plaintiffs suggest, is to ignore to statute more specifically directed at the prescription issue in the context *529 of Medical Malpractice Act, which states that plaintiff must first convene a medical review panel in order to stop the running of prescription. Based upon the reasoning of LeBreton, supra, we therefore find the controlling provision for the issue at hand to be contained in the Medical Malpractice Act.
In the case of Tuazon v. Eisenhardt,[17] this Court held that where a plaintiffs' request for a medical review panel was filed more than one year after the alleged acts of malpractice, the plaintiffs bear the burden of proving that prescription was suspended. In this case, a review of the record shows that the plaintiffs have not carried the burden of proving the prescription was interrupted via the tolling doctrine of "contra non valentum."[18] Accordingly, we find that the trial court did not err in finding that the plaintiffs' claim against Ochsner had prescribed.
AFFIRMED
CANNELLA, J., dissents with reasons.
CANNELLA, J., dissenting with reasons.
I dissent from the majority opinion. In this medical malpractice case, while I understand the equitable, length of time considerations, I know of no case that has departed from the well-settled rule that suit against one solidary obligor interrupts prescription as to all solidary obligors.
Based on the partial record before us, it is impossible to determine with certainty whether the suit against Bauer, alleged to be a solidary obligor with Ochsner, is still pending. In my view, the prescription issue presented herein turns on whether that case is still pending. If so, then prescription against all solidary obligors, including Ochsner, remains interrupted. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986).[1] Accordingly, I dissent from the majority opinion affirming the trial court ruling which granted Ochsner's exception of prescription.
NOTES
[1] The consent judgment acknowledged the prematurity of the plaintiffs' action against Ochsner, stating that the provisions of La. R.S. 40:1299.41, et seq, had not yet been complied with.
[2] In plaintiffs' first appeal, Schulingkamp v. Ochsner Clinic, 99-558 (La.App. 5 Cir. 1/25/00), 752 So.2d 275, writ denied, XXXX-XXXX (La.2000), 760 So.2d 348, we found that although an order dismissing the action was improperly granted, the plaintiffs had not sought a motion to vacate the dismissal within a reasonable time. In plaintiffs' second appeal, Schulingkamp v. Ochsner Clinic, 00-1129 (La.App. 5 Cir. 12/13/00), 777 So.2d 550, we held that plaintiffs could not appeal a judgment of dismissal for abandonment after the exception of prescription had been granted and affirmed by both this Court and the Supreme Court; accordingly we dismissed plaintiff's appeal for lack of jurisdiction.
[3] 99-0025 (La.App. 4 Cir. 3/1/00); 757 So.2d 145, 148; writ denied, 766 So.2d 1278 (La. 2000); writ denied, 766 So.2d 1277 (La.2000).
[4] 283 So.2d 716 (La.1973).
[5] Borchardt v. Carline, (La.App. 4 Cir.1993), 617 So.2d 970, 973; writ denied, 620 So.2d 844; reh'g denied, 623 So.2d 1292 (La.1993).
[6] Revision Comment "D" to this article states, "The words `laws enacted for the protection of the public interest' have the same meaning as `laws for the preservation of public order.'"
[7] 467 So.2d 113 (La.App. 3 Cir.1985); overruled by LeBreton v. Rabito, 97-2221 (La.7/8/98); 714 So.2d 1226.
[8] 613 So.2d 150 (La.1992).
[9] 98-666 (La.App. 5 Cir. 12/16/98), 725 So.2d 553.
[10] 486 So.2d 717 (La.1986).
[11] We further note that White involved an instance where a medical review panel had been properly convened against the first solidary obligor prior to the time that the appellant was added to the case.
[12] 30,066 (La.App. 2 Cir. 12/10/97), 704 So.2d 938, 943; Subsequent appeal at: 32,752 (La.App. 2 Cir.2000), 756 So.2d 1257; writ denied, 765 So.2d 1043 (La.2000).
[13] 97-2221 (La.7/8/98); 714 So.2d 1226.
[14] Id. at 1227.
[15] Id. at 1230.
[16] Id. at 1229.
[17] 98-666 (La.App. 5 Cir. 12/16/98), 725 So.2d 553.
[18] Id. at 555.
[1] Ochsner may be able to prove that it is not a solidary obligor with Bauer, in which case prescription would not have been interrupted. But, in the present posture of the case, that has not been pled nor proven.