964 So.2d 1081 (2007)
André J. DENOUX, Kurt Labeaud, Theron J. Washington, David Dickerson, Robert P. Williams, Jr., Richard W. Blackman, Christopher R. Booker, Horace Blanks, III, Derrick A. Matthews, Robert Taylor, Christopher G. Haines and Lorenzo N. Morgan
v.
VESSEL MANAGEMENT SERVICES, INC., Belle of Orleans, LLC, Bally's Louisiana, Inc., d/b/a Bally's Casino Lakeshore Resort, Inc. and Patrick M. Browning.
No. 2007-CA-0163.
Court of Appeal of Louisiana, Fourth Circuit.
July 11, 2007.
Rehearing Denied October 3, 2007.
*1083 R. Brent Cueria, New Orleans, LA, Louis R. Koerner, Jr., Koerner Law Office, Houma, LA, for Plaintiffs/Appellants.
James D'Entremont, Barbara L. Arras, Phelps Dunbar LLP, New Orleans, LA, for Glidden Company d/b/a ICI Paints.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS SR., and Judge EDWIN A. LOMBARD).
CHARLES R. JONES, Judge.
The Appellants, André J. Denoux, Kurt Labeaud, Theron J. Washington, David Dickerson, Robert P. Williams, Jr., Richard W. Blackman, Christopher R. Booker, Horace Blanks, III, Derrick A. Matthews, Robert Taylor, Christopher G. Haines, Lorenzo N. Morgan, Lindy Forriest, Maurice C. Tabb, Luis Fuentes and Don Martin Hayes (hereinafter collectively referred to as "Crew Members") seek review of a Civil District Court judgment which granted an exception of prescription in favor of the Appellee, the Glidden Company, d/b/a ICI Paints (hereinafter "Glidden") and dismissed the claims of the Crew Members against Glidden. We affirm.

FACTS AND PROCEDURAL HISTORY
The Crew Members were employees of Vessel Management Services, Inc. (hereinafter "VMS"). The Crew Members allege that between April 2000 and June 2000 they were exposed to and injured by toxic fumes from the Glidden Devflex 4206/4208 products, which are solvent based paints, while painting and chipping the Belle of Orleans, a riverboat casino. The Crew Members participated in the "Inner Bottom Project" in which they were responsible for painting the bottom interior portion of the hull of the vessel. The Crew Members aver that they became and remain sick with a variety of chronic symptoms such as respiratory, neurological and hematological disorders as a result of their participation in the "Inner Bottom Project." They also contend that they were forced to work in a dark, airless hold with insufficient ventilation for excessive periods of time without proper personal protective equipment.
Once the project was underway, many of the Crew Members complained to VMS of the paint fumes, filed incident reports, and sought medical treatment. A Glidden representative was apprised of the situation and met with the crew to assure them of the safety of the paint. However, work on the project ceased until ventilation fans were installed. Subsequently, the Coast Guard stopped work on the project.
*1084 On November 14, 2001, the Crew Members filed a Petition for Damages against VMS. On March 17, 2002, Glidden was added as a defendant to the main demand by the Crew Members' Fourth Amended Petition. In response, Glidden filed a Peremptory Exception of Prescription. Glidden's Peremptory Exception of Prescription was heard on July 14, 2006. After reviewing all the evidence and memoranda submitted, the district court granted the exception dismissing the Crew Members' claims against Glidden. A judgment maintaining Glidden's exception was entered on August 10, 2006. The Crew Members' filed a writ application with this court on September 23, 3006. We denied the application for writs on October 24, 2006, holding that a formal appeal would be the appropriate course of action. Subsequently, the Crew Members filed the instant appeal.
The Crew Members raise two issues on appeal. In their first assignment of error, the Crew Members aver that the district court committed manifest error in granting Glidden's exception of prescription. The second assignment of error is that the district court committed manifest error in applying a Louisiana prescriptive period of one year to a maritime tort rather than the three year statute of limitations provided for by 46 U.S.C.App. § 763c. Although the Crew Members assert two assignments of error, their first assignment lacks cohesion and is difficult to discern; therefore, we find that the only genuine assignment of error is that the district court erroneously applied the Louisiana prescriptive period rather than the prescriptive period applicable in maritime law.

Law and Discussion
"The standard of review of a trial court's finding of facts supporting prescription is that the appellate court should not disturb the finding of the trial court unless it is clearly wrong." Turnbull v. Thensted, 99-0025, p. 5 (La.App. 4 Cir. 3/1/00), 757 So.2d 145, 148. Similarly, the trial court's fact finding regarding prescription should not be reversed without a finding of manifest error because the issue before the appellate court is not whether the fact finder is right or wrong, but whether the fact finder reached a reasonable conclusion. Id. at 149.
The Crew Members argue that the district court committed manifest error when it granted Glidden's exception of prescription because the district court applied a Louisiana prescriptive period of one year rather than the three year statute of limitations applicable to maritime law. Thus, the relevant inquiry here is what is the applicable law in the instant matter.
According to Louisiana law, a party must assert a delictual claim within one year of sustaining the injury or damage. Hoerner v. Wesley-Jensen, Inc., 95-0553 (La.App. 4 Cir. 11/20/96), 684 So.2d 508, 510. "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ.Code Ann. art. 3492. The one year prescriptive period applies to all delictual actions including those brought pursuant to the Louisiana Products Liability Act. Furthermore, if the face of the petition shows that the prescriptive period has already elapsed, the plaintiff has the burden of establishing that suspension, interruption or renunciation of prescription has occurred. Wimberly v. Gatch, 93-2361 (La.4/11/94), 635 So.2d 206, 211. See also, Bouterie v. Crane, 92-2994, (La.4/12/93), 616 So.2d 657, 659.
Nevertheless, the Crew Members aver that maritime law through the Jones Act or general maritime law is applicable to the case at bar. The Crew Members *1085 assert that they are seamen under the Jones Act, and in that capacity they were injured while working on the Belle of Orleans, a navigable vessel. In order for a plaintiff to recover from his employer under either the Jones Act, or general maritime law, the plaintiff must be a seaman injured aboard a vessel in navigation. Pavone v. Mississippi Riverboat Amusement, Ltd., 52 F.3d 560, 565 (5th Cir.1995). The Jones Act provides that a seaman injured in the course and scope of his employment may bring a cause in negligence against his employer. 46 U.S.C.A.App. § 688(a).
"Jones Act coverage is confined to seamen, those workers who face regular exposure to the perils of the sea." Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 560, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997). The Jones Act, however, does not define a seaman; the courts must, then, determine which maritime workers qualify for seaman status. Chandris, Inc. v. Latsis, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). In Chandris, the U.S. Supreme Court listed two characteristics a maritime worker must possess in order to qualify as a seaman: (1) "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission and (2) a seaman must have a connection to a vessel in navigation . . . that is substantial in terms of its duration and its nature." Id. at 368, 115 S.Ct. 2172. Therefore, the "ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land based employee who happens to be working on the vessel at a given time." Richard v. Hooks, 01-0145, p. 4 (La.10/16/01), 799 So.2d 462, 465. This inquiry must determine whether the employee's responsibilities take him to sea. Harbor Tug and Barge, Co., 520 U.S. at 555, 117 S.Ct. 1535.
In Cappiello v. Exxon Corporation, 96-2418, (La.App. 4 Cir. 5/28/97), 695 So.2d 1097, we held that a plaintiff who was responsible for inspecting, testing, and maintaining various wells and tank batteries offshore was a Jones Act seaman. The plaintiff in Cappiello worked five (5) eight-hour workdays, and lived on land with his wife. He was responsible for the care and maintenance of the vessel, the Stingray, and navigated various lakes, bayous and canals during working hours. The plaintiff encountered traffic from other vessels during the course of his work; he learned the area he navigated thoroughly in order to avoid underwater obstructions and other navigable vessels. Id. at 1100. Based upon the above information, we found that the plaintiff fulfilled the qualifications of a seaman detailed by the Chandris Court. Id.
As distinguished from Cappiello, the Crew Members were not exposed to the perils of the sea, nor did their primary obligations aboard the Belle of Orleans take them to sea. In the instant case, the Crew Members in addition to painting and chipping the Belle of Orleans, prepared the casino for sailing, and secured the boat when it was docked. Furthermore, they also performed ordinary maintenance of the boat such as repairing video poker machines and taking out the garbage. One crew member, André Denoux, admitted in deposition that he applied with VMS because he wanted a land based job. Denoux described his work aboard the Belle of Orleans as a lot of housekeeping stuff.
The Belle of Orleans must also qualify as a vessel for the Crew members to qualify as seamen under the Jones Act. In Cappiello, the Stingray vessel navigated bodies of water daily. Moreover, the boat was specifically outfitted for the particular tasks that the plaintiff had to perform *1086 aboard it. The instant case is distinguishable in that the Belle of Orleans was a floating casino in which the Crew Members were employed to maintain the boat in its capacity as a casino, not as a vessel in navigation.
In Davis v. Players Lake Charles Riverboat, Inc., 74 F.Supp.2d 675, (W.D.La. 1999), the Western District Court of Louisiana found that the Players Riverboat Casino was not a vessel under the Jones Act. The casino made frequent trips into Lake Charles, but the court reasoned that mere movement of a casino over navigable waters was not sufficient to confer vessel status in order to invoke admiralty jurisdiction. Id. at 676. Board of Commissioners of the Orleans Levee District v. Belle of Orleans, 439 F.Supp.2d 1178, 1194, (S.D.Ala.2006), also found that the Belle of Orleans was not a vessel. The Southern District Court of Alabama followed Pavone and reasoned that semi-permanently or permanently moored floating casinos are not vessels. Id. at 1194. The Belle of Orleans was a floating casino that made cruises into Lake Ponchartrain. Simply traveling into navigable waters, however, does not make the Belle of Orleans a vessel under the Jones Act. For the above reasons, we find that the Crew Members were not seamen pursuant to the Jones Act.
Under general maritime law, the U.S. Supreme Court has established a two prong test for determining a maritime nexus sufficient to establish admiralty jurisdiction: (1) the court must determine whether the incident has a potentially disruptive impact on maritime commerce and (2) the court must examine whether there is a substantial relationship between the activity giving rise to the incident and traditional maritime activity. Hertz v. Treasure Chest Casino, L.L.C., 274 F.Supp.2d 795, 806 (E.D.La.2003). In Hertz, the plaintiff was the captain of the Treasure Chest, a floating casino, and was injured while removing carpet. The court determined that the plaintiff was captain in name only because he did not have captain duties while the Treasure Chest was used as a casino. The court reasoned that since the captain was injured while the vessel was beached his injury had no effect on maritime commerce, nor did his injury have a substantial relationship to traditional maritime activity. Id.
In Davis, supra, the Western District Court of Louisiana held that although a patron was injured while aboard the casino, the accident did not impact maritime commerce. 74 Supp.2d at 676. The court also reasoned that the Riverboat was not a vessel in navigation, but a casino that made short cruises over water. The court held that since gaming was the activity that caused the plaintiff's injury, there was no substantial relationship between the gaming and traditional maritime activity. Id.
Similarly, the Crew Members were injured while the Belle of Orleans was moored to the shore. The boat did not cruise while they worked on the "Inner Bottom Project." The Crew Members were injured while improving the aesthetics of the casino. Therefore, the Crew Members' injuries neither disrupted maritime commerce, nor was there a substantial relationship between the painting and chipping of the casino and traditional maritime activity. Thus, admiralty jurisdiction is not applicable in the instant matter.
The district court held that the Crew Members' cause of action was governed by Louisiana law which has a one year prescriptive period for tort claims. We agree. The crew members allege that they were exposed to toxic chemicals while painting the Belle of Orleans. This exposure occurred between April and June of 2000. *1087 In March 2002, Glidden was made a party to the lawsuit. In the Fourth Amended Petition, the Crew Members averred that Glidden was liable pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51. The Crew Members filed their suit 18 months after their injuries occurred. We conclude that the Fourth Amended Petition was not timely filed and had prescribed on its face.

DECREE
For the foregoing reasons, we affirm the district court's grant of Glidden's Exception of Prescription.
AFFIRMED.